[No. S084105. Aug. 30, 2001.]

MANUEL TORRES et al., Plaintiffs and Appellants, v.
PARKHOUSE TIRE SERVICE, INC., et al., Defendants and Respondents.

**COUNSEL**

Moreno & Associates, Andrés Moreno and William Baker for Plaintiffs and Appellants.

Law Offices of Martina A. Silas and Martina A. Silas for Worksafe! and Communities for a Better Environment as Amici Curiae on behalf of Plaintiffs and Appellants.

Post Kirby Noonan & Sweat and David B. Oberholtzer for Defendant and Respondent Roy G. Naas.

Wolfe Axtmann, David G. Axtmann; Booth, Mitchell & Strange and Richard F. Wolfe for Defendant and Respondent Parkhouse Tire Service, Inc.

Latham & Watkins, Joel E. Krischer and Kathryn M. Davis for Employers Group as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**CHIN, J.**—Under an exception to the exclusivity of workers' compensation remedies, an injured employee may bring a civil action against another employee "[w]hen the injury or death is proximately caused by the willful and unprovoked physical act of aggression of the other employee." (Lab. Code,[1] § 3601, subd. (a)(1).) The question we address is whether, as a general rule, a trial court properly may instruct the jury that the injured employee must prove that the other employee had an intent to injure in order to satisfy section 3601, subdivision (a)(1). We conclude the answer is yes.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are taken largely from the Court of Appeal opinion.

Manuel Torres worked for Parkhouse Tire Service, Inc. (Parkhouse), repairing and installing tires. Roy G. Naas, a sales representative for Parkhouse, approached Torres from behind while he was on his knees working on a tire. ██ Naas grabbed Torres's back support belt, lifted him off the ground several times, and finally dropped him on his knees.[2] Suffering a back injury, Torres did not return to work for Parkhouse. Torres claimed the incident was malicious, while Naas countered it was innocent horseplay.

Torres and his wife (plaintiffs) sued Parkhouse and Naas seeking damages for personal injury and loss of consortium. The complaint alleged that Naas committed a "willful and unprovoked physical act of aggression" against Torres so as to render Naas subject to civil suit under section 3601, subdivision (a)(1). The complaint also alleged that employer Parkhouse condoned and ratified Naas's tortious actions, making it also subject to suit.[3] The trial court instructed the jury that in order to impose liability, the jury must find that (1) Torres's "injury was caused by a willful and unprovoked physical act of aggression on the part of [Naas]," and (2) Naas "committed the act with the intent to cause injury."

---

[1]All statutory references are to the Labor Code unless otherwise indicated.

[2]At oral argument, Naas's counsel disputed this account. He argued that contrary to the Court of Appeal's opinion, the jury found that Naas did not lift Torres off his knees. "As a matter of policy" this court will not consider "any issue or any material fact that was omitted from or misstated in the opinion of the Court of Appeal, unless the omission or misstatement was called to the attention of the Court of Appeal in a petition for rehearing." (Cal. Rules of Court, rule 29(b)(2).) Counsel for Naas conceded his client did not request correction in a petition for rehearing to the Court of Appeal. Therefore, we will not consider any factual complaints here.

[3]An employee may bring an action against an employer "[w]here the employee's injury or death is proximately caused by a willful physical assault by the employer." (§ 3602, subd. (b)(1).)

The jury returned a special verdict finding that Naas did not "commit a willful and unprovoked act of physical aggression against plaintiff Manuel Torres with the intent to cause injury."

Plaintiffs appealed. Reversing the trial court's judgment, the Court of Appeal majority held that plaintiffs were not required to prove Naas's specific intent to injure in order to recover damages under section 3601, subdivision (a)(1). The majority found that this statutory exception to workers' compensation exclusivity "does not state that the injury must be 'intentionally' or 'willfully' caused by the physical act of aggression." The majority expressly disagreed with *Soares v. City of Oakland* (1992) 9 Cal.App.4th 1822, 1826-1829 [12 Cal.Rptr.2d 405] (*Soares*), which held to the contrary. The dissenting justice (Kremer, P. J.), however, concluded that an intent to injure requirement comported with this court's decision in *Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719 [100 Cal.Rptr. 301, 493 P.2d 1165] (*Mathews*).

We granted review. Several days before the scheduled oral argument, Naas's counsel informed the court that the parties had reached a settlement. However, no party requested dismissal of the appeal. ■ Although the settlement may have rendered this case technically moot, "we instead follow the well-established line of judicial authority recognizing an exception to the mootness doctrine, and permitting the court to decline to dismiss a case rendered moot by stipulation of the parties where the appeal raises issues of continuing public importance." (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)

DISCUSSION

A. *Exclusivity rule*

■ As a general rule, an employee who sustains an industrial injury "arising out of and in the course of the employment" is limited to recovery under the workers' compensation system. (§ 3600, subd. (a); *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 708 [30 Cal.Rptr.2d 18, 872 P.2d 559] (*Fermino*).) We have observed that this rule of exclusivity is based on the " 'presumed "compensation bargain," pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' " (*Fermino, supra*, 7 Cal.4th at p. 708, quoting *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].)

■ To prevent employees from circumventing the exclusivity rule by bringing lawsuits for work-related injuries against coemployees, who in turn would seek indemnity from their employers, the Legislature in 1959 provided immunity to coemployees. (§ 3601, subd. (a), as amended by Stats. 1959, ch. 1189, § 1, p. 3275 [amending § 3601 to substantially its current version].) In other words, the purpose of the exclusivity rule would be defeated if employees could bring actions against fellow employees acting in the scope of employment such that the fellow employees' negligence could be imputed to their employers. (*Saala v. McFarland* (1965) 63 Cal.2d 124, 130 [45 Cal.Rptr. 144, 403 P.2d 400].) Therefore, workers' compensation was also made the exclusive remedy against fellow employees acting within the scope of employment. (*Ibid.*) The words " ' "acting within the scope of his [or her] employment" ' " should be interpreted in light of the purpose of section 3601, so as not to extend immunity beyond respondeat superior situations. (63 Cal.2d at p. 130; *Hendy v. Losse* (1991) 54 Cal.3d 723, 734 [1 Cal.Rptr.2d 543, 819 P.2d 1].) For conduct committed within the scope of employment, employees, like their employers, should not be held subject to suit. (*Ibid.*; see also 6 Larson, Workers' Compensation Law (2001) § 111.03[2], p. 111-11 [because employees give up the right to sue for industrial injuries as part of the compensation bargain, employees should also be entitled to freedom from suit for industrial accidents in which employees are at fault].)

■ There are, however, statutory exceptions to coemployee immunity. As relevant here, a civil suit is permissible when an employee proximately causes another employee's injury or death by a "willful and unprovoked physical act of aggression" (§ 3601, subd. (a)(1)) or by intoxication. (§ 3601, subd. (a)(2).)[4] If an employee brings a lawsuit against a coemployee based on either of these exceptions, the employer is not "held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee . . . ." (§ 3601, subd. (b).) This provision is consistent with the view that a coemployee is immune from suit to the extent necessary to prevent an end-run against the employer under the exclusivity rule. (*Saala v. McFarland, supra,* 63 Cal.2d at p. 130.) "It is self-evident that Labor Code section 3601 did not establish or create a new right or cause of action in the employee but severely limited a preexisting right to freely sue a fellow employee for damages." (*Miner v. Superior Court* (1973) 30 Cal.App.3d 597, 600 [106 Cal.Rptr. 416].)

---

[4]Section 3601, subdivision (a) previously contained a third exception to workers' compensation exclusivity, for a coemployee's act "which evinces a reckless disregard for the safety of the employee injured, and a calculated and conscious willingness to permit injury or death to such employee." (§ 3601, former subd. (a)(3), added by Stats. 1959, ch. 1189, § 1, p. 3275.) The Legislature deleted this subdivision in 1971. (Stats. 1971, ch. 1751, § 1, p. 3780.)

■ With this background in mind, we address whether the trial court properly instructed the jury that plaintiffs were required to prove that Naas acted with the intent to cause injury in order to establish that Naas had committed a "willful and unprovoked physical act of aggression" against Torres under section 3601, subdivision (a)(1).

### B. *Section 3601, subdivision (a)(1)*

■ In interpreting a statute where the language is clear, courts must follow its plain meaning. (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 38 [283 Cal.Rptr. 584, 812 P.2d 931].) However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) In the end, we " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Id.* at pp. 977-978.)

■ Like the Court of Appeal, plaintiffs assert that the exception's language is plain and expressly does not include an intent to injure element. (See § 3601, subd. (a)(1).) Thus, they assert that a court may only instruct a jury on the words of the statute without defining its terms, and without recognizing an intent to injure requirement.

We disagree that the meaning of section 3601, subdivision (a)(1)'s statutory language is clear on its face. The Labor Code does not specifically define the phrase "willful and unprovoked physical act of aggression." (§ 3601, subd. (a)(1).) Indeed, past decisions demonstrate that the facts of a particular case may raise questions as to the proper interpretation and application of this statutory language. For example, issues have included whether a "physical act of aggression" applies only in instances in which the coemployee makes physical contact with the injured employee (e.g., *Iverson v. Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219, 225 [191 Cal.Rptr. 696] (*Iverson*); cf. *Mathews, supra,* 6 Cal.3d at p. 727), or whether a coemployee engages in a "willful . . . physical act of aggression" only when the coemployee acts with an intent to injure as in *Soares, supra,* 9 Cal.App.4th 1822, and the present case.

■ Contrary to the dissent's suggestion, a jury instruction that clarifies the application of statutory language in a particular context does not "add to

the words of a statute." (Dis. opn., *post*, at p. 1011.) It is a court's duty and responsibility to determine the meaning and scope of statutory language that is ambiguous. " 'An instruction in the language of a statute is proper only if the jury would have no difficulty in understanding the statute without guidance from the court. [Citations.] It is not proper if reasonable men might differ as to the construction of the statute, for it would delegate to the jury the function of statutory interpretation that belongs to the court. [Citation.]' " (*People v. Thomas* (1945) 25 Cal.2d 880, 895 [156 P.2d 7].) In considering the proper interpretation of the statute, we look to both the statutory phrase as a whole ("willful and unprovoked physical act of aggression"), and the legislative purpose behind the provision. (§ 3601, subd. (a)(1).)

In *Iverson*, the Court of Appeal found that the willful and unprovoked physical act of aggression exception was similar to section 3600, former subdivision (g) (now subdivision (a)(7)),[5] barring compensation for injuries to an "initial physical aggressor." (*Iverson*, *supra*, 143 Cal.App.3d at p. 225.) Relying on our decision in *Mathews*, *supra*, 6 Cal.3d at page 727, *Iverson* observed that an "initial physical aggressor" was defined as " 'one who first engages in physical conduct which a reasonable man would perceive to be a " 'real, present and apparent threat of bodily harm.' " ' " (*Iverson*, *supra*, 143 Cal.App.3d at p. 225.) The aggressor need not commit a battery because bodily contact is not a significant factor. (*Ibid.*) Under certain circumstances, clenching a fist or pointing a gun may be sufficient to trigger section 3600, subdivision (a)(7). (*Iverson*, *supra*, 143 Cal.App.3d at p. 225.) Thus, the *Iverson* court concluded that a "willful and unprovoked physical act of aggression" under section 3601, subdivision (a)(1) is "obviously intended to permit a civil action for damages whenever a coemployee commits an intentional tort by aggressive physical conduct." (*Iverson*, *supra*, 143 Cal.App.3d at p. 225.)

Although we found that *Iverson* was overbroad insofar as it suggested that "all intentional torts are categorically excepted from the exclusivity rule" (*Fermino*, *supra*, 7 Cal.4th at p. 718), we find persuasive its reliance on the definition of an "initial physical aggressor" (§ 3600, subd. (a)(7)) to interpret, in part, the "willful and unprovoked physical act of aggression" exception here. (§ 3601, subd. (a)(1).) The provisions' similar language strongly suggests that they are complementary and should be construed consistently. Indeed, an employee may bring an action against another employee for a willful physical act of aggression only if it is "unprovoked." (§ 3601, subd. (a)(1).) This is consistent with section 3600's bar of compensation for an

---

[5]An employee may not receive compensation for an injury that "arise[s] out of an altercation in which the injured employee is the initial physical aggressor." (§ 3600, subd. (a)(7).)

" '*initial* physical aggressor' " who "*first* introduces an element of physical violence into the confrontation, thus creating the risk of injury." (*Mathews, supra,* 6 Cal.3d at p. 728.) ██ " '[W]hen words used in a statute have acquired a settled meaning through judicial interpretation, the words should be given the same meaning when used in another statute dealing with an analogous subject matter; this is particularly true, where . . . both statutes were enacted for the welfare of employees and are in harmony with each other.' [Citation.]" (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 496, fn. 16 [66 Cal.Rptr.2d 304, 940 P.2d 891].)

██ Consistent with these authorities, we conclude an "unprovoked physical act of aggression" (§ 3601, subd. (a)(1)) is unprovoked conduct intended to convey an actual, present, and apparent threat of bodily injury. (*Mathews, supra,* 6 Cal.3d at p. 727.) A "threat," of course, is commonly understood as "an expression of intention to inflict evil, injury, or damage" (Webster's New Collegiate Dict. (9th ed. 1990) p. 1228; see also American Heritage Dict. (new college ed. 1981) p. 1340) and as "[a] communicated intent to inflict harm or loss on another . . . ." (Black's Law Dict. (7th ed. 1999) p. 1489, col. 2.) Thus, "unprovoked physical act of aggression" (§ 3601, subd. (a)(1)) logically contemplates intended injurious conduct. By adding the term "willful," the Legislature has underscored the need for an intent to bring about the consequences of that expression, i.e., an intent to inflict injury or harm. (See *Mercer-Fraser Co. v. Industrial Acc. Com.* (1953) 40 Cal.2d 102, 118 [251 P.2d 955] [" '[w]hile the word "wilful" implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done' "].)

Standing alone, "aggression" is itself a powerful term defined as "[a]n unprovoked attack; the first attack in a quarrel; an assault; an inroad" (1 Oxford English Dict. (2d ed. 1989) p. 254), and as "a forceful action or procedure (as an unprovoked attack) esp. when intended to dominate or master." (Webster's New Collegiate Dict., *supra,* p. 64.) Indeed, at least one out-of-state decision has required evidence of "some offensive action or hostile attack" to prove aggression. (*Kearney v. Denker* (1988) 114 Idaho 755 [760 P.2d 1171, 1173-1174] [citing Idaho Code § 72-209(3): "willful or unprovoked physical aggression" exception to workers' compensation exclusivity requires "an intention to injure the employee"].) The term "aggression," therefore, suggests intentional harmful conduct.

Contrary to the Court of Appeal's analysis, the Legislature's use of the term "intentionally" and the phrase "willfully and deliberately" in other provisions of the workers' compensation scheme does not alter our conclusion. These provisions exclude compensation to employees whose injuries

were "intentionally self-inflicted" (§ 3600, subd. (a)(5)), or whose deaths were "willfully and deliberately caused" by themselves. (§ 3600, subd. (a)(6).) The fact that the Legislature used these words in those provisions, and not in section 3601, subdivision (a)(1), does not necessarily indicate that it intended to omit from this section the requirement that the coemployee intentionally or willfully injured another. Unlike the term "willful" in section 3601, subdivision (a)(1), "intentionally" and "willfully and deliberately" do not modify an already intentional or deliberate act, such as a physical act of aggression, but describe the manner in which the employees' own injuries or deaths are caused. (§ 3600, subd. (a)(5) & (6).) Thus, the Legislature's use of the modifying word "willful," rather than "intentional" or "willful and deliberate," in section 3601, subdivision (a)(1) does not mandate a contrary conclusion.

We conclude, as a general rule, that a "willful and unprovoked physical act of aggression" includes an intent to injure requirement. (§ 3601, subd. (a)(1).)[6]

## C. *Horseplay*

■ In general, if an employer condones what courts have described as "horseplay" among its employees, an employee who engages in it is within the scope of employment under section 3601, subdivision (a), and is thus immune from suit, unless exceptions apply. (*Oliva v. Heath* (1995) 35 Cal.App.4th 926, 933 [41 Cal.Rptr.2d 613]; but see *Pacific Emp. Ins. Co. v. Ind. Acc. Com.* (1945) 26 Cal.2d 286, 294 [158 P.2d 9, 159 A.L.R. 313] [holding a nonparticipating employee's injury from a coemployee's horseplay is compensable under § 3600].)

Although horseplay in the workplace is characterized by a lack of animosity, it may be committed under circumstances involving an obvious and significant risk of injury. (See, e.g., *Pacific Emp. Ins. Co. v. Ind. Acc. Com.*, *supra*, 26 Cal.2d 286 [busboys throwing hard rolls at each other and striking another employee]; *Oliva v. Heath*, *supra*, 35 Cal.App.4th at p. 933 [employees lowering coemployee's chair as a prank]; *Hodges v. Workers' Comp.*

---

[6]Because the issue is not presented by the facts of this case, we need not decide whether there may be some circumstances in which an intent *to threaten to inflict physical injury* would be sufficient to bring a coemployee's conduct within the reach of the statute. For example, suppose a coemployee, angered over a work-related incident and acting within the scope of employment, pointed a gun in a threatening manner at another employee in the workplace. If that employee, reasonably fearing being shot, dove for cover and thereby sustained injury, a trier of fact might reasonably find that the resulting injury was proximately caused by the coemployee's "willful and unprovoked physical act of aggression" under section 3601, subdivision (a)(1), even if the coemployee's subjective intent was only to threaten physical injury rather than inflict it.

*Appeals Bd.* (1978) 82 Cal.App.3d 894, 898-899 [147 Cal.Rptr. 546] [employees' friendly sparring match]; *Argonaut Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669, 672 [55 Cal.Rptr. 810] [ranch employees chasing each other around bunkhouse].) Thus, by defining "willful and unprovoked physical act of aggression" in terms of an intent to injure element, the Legislature has ensured that section 3601, subdivision (a)(1)'s reach would not extend to acts traditionally viewed as horseplay that are otherwise subject to exclusive coverage under the workers' compensation system.

Given the "the propensities and tendencies of mankind and the ordinary habits of life, it must be admitted that wherever human beings congregate, either at work or at play, there is some frolicking and horseplay." (*Pacific Emp. Ins. Co. v. Ind. Acc. Com.*, *supra*, 26 Cal.2d at p. 294.) We doubt the Legislature intended to permit employees to sue each other based on conduct arguably inherent in the workplace. Indeed, that result would be inconsistent with section 3601's aim to "severely limit[] a preexisting right to freely sue a fellow employee for damages." (*Miner v. Superior Court*, *supra*, 30 Cal.App.3d at p. 600.)

At oral argument, however, plaintiffs asserted that the horseplay doctrine is irrelevant in this case. They emphasized that jurors understand the distinction between horseplay and aggression, and that imposing an intent to injure requirement is unwarranted and unnecessary. To that end, they argued that the exception requires only a "hostile intent," which they did not clearly define, to commit a physical act of aggression.

We are unpersuaded. Because horseplay is characterized by a lack of animosity (*Mathews*, *supra*, 6 Cal.3d at p. 726), jurors, in distinguishing between horseplay and aggression, must still consider the presence of any "[b]itter hostility or open enmity . . . [or] active hatred." (American Heritage Dict., *supra*, p. 52 [defining "animosity"].) Moreover, as discussed, the term "aggression" also suggests intentional harmful conduct. (See *ante*, p. 1005.) Although plaintiffs underscore that the phrase "intent to injure" is not contained in the exception, they fail to discern the full import of the phrase "willful and unprovoked physical act of aggression." (§ 3601, subd. (a)(1).) Finally, plaintiffs fail to show how a "hostile intent" to commit a physical act of aggression has any practical difference from an intent to injure in this context.

D. *Case law*

Contrary to plaintiffs' contention, *Fermino* does not suggest that an intent to injure is not required under section 3601, subdivision (a)(1). In *Fermino*,

we held that an employer who falsely imprisons an employee to investigate possible theft is not immune from suit under the exclusivity rule. (*Fermino, supra*, 7 Cal.4th at p. 723.) Although we observed that false imprisonment does not "entail an intent or motive to cause harm" (*id.* at p. 716), we did not hold that an employer's intent to injure is irrelevant to prove whether certain misconduct falls outside the exclusivity rule's protection. Instead, we held that like "those classes of intentional employer crimes against the employee's person by means of violence and coercion," an employer's false imprisonment of an employee is *always* outside the compensation bargain. (*Id.* at pp. 723, fn. 7, 721-722.) In that respect, "any inquiry into an employer's motivation is undertaken not to determine whether the employer intentionally or knowingly injured the employee, but rather to ascertain whether the employer's conduct violated public policy and therefore fell outside the compensation bargain." (*Id.* at pp. 714-715.)

*Iverson* also does not support plaintiffs' argument. As discussed, we found that the *Iverson* Court of Appeal's suggestion that section 3601, subdivision (a)(1) permits a civil action whenever a coemployee commits an intentional tort by aggressive physical conduct (*Iverson, supra*, 143 Cal.App.3d at p. 225) was too broad. (*Fermino, supra*, 7 Cal.4th at p. 718; see *ante*, at p. 1004.) We noted, moreover, that the *Iverson* case, "even without the elements of assault, would seem to be outside the compensation bargain because [it was] nothing more than personal attacks on the employee, unmotivated by any legitimate employer concerns." (*Fermino, supra*, 7 Cal.4th at p. 721.) Contrary to plaintiffs' assertions, *Iverson* supports our conclusion that an intent to injure is required under section 3601, subdivision (a)(1) in order to file a civil suit.

## E. *Other issues*

Recognizing an intent to injure element under this exception is consistent with the exclusivity rule, which immunizes employees' acts committed within the scope of employment. (§ 3601, subd. (a).) ██ We have held generally that employees' "willful, malicious and even criminal torts" may be committed within the scope of employment, thus rendering their employers liable under respondeat superior. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 [48 Cal.Rptr.2d 510, 907 P.2d 358] [sexual molestation of patient was not within scope of employment]; see also *Carr v. Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 654 [171 P.2d 5] [throwing hammer at person was within scope of employment].) To be within the scope of employment, the incident giving rise to the injury must be an outgrowth of the employment, the risk of injury must be inherent in the workplace, or typical of or broadly incidental to the employer's enterprise.

(*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra*, 12 Cal.4th at p. 298.)

Flare-ups, frustrations, and disagreements among employees are commonplace in the workplace and may lead to "physical act[s] of aggression." (See *Carr v. Wm. C. Crowell Co., supra*, 28 Cal.2d at p. 656; *Hodges v. Workers' Comp. Appeals Bd., supra*, 82 Cal.App.3d at p. 902.) " 'In bringing [people] together, work brings [personal] qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flareup. . . . These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment.' [Citations.]" (*Carr v. Wm. C. Crowell Co., supra*, 28 Cal.2d at p. 656.) ▮▮▮ Because an employee's willful acts, including aggressive physical acts, may be considered within the scope of employment—thus subject to the exclusivity provision of section 3601, subdivision (a)—it follows that the Legislature envisioned this exception from exclusivity as requiring something more. (§ 3601, subd. (a)(1); see also *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, 476 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758] [trend toward allowing actions against employer who "acts deliberately for the purpose of injuring the employee"].)

Contrary to plaintiffs' and amici curiae's assertions, the statute's intent to injure requirement will not shield violent employees from civil suit. In situations where employees acting within the scope of employment commit violent, injurious acts against coemployees, triers of fact could reasonably infer an intent to injure to take the actions outside the exclusivity rule's protection. (See § 3601, subd. (a)(1); *Soares, supra*, 9 Cal.App.4th at p. 1831.) We reject plaintiffs' contention that the intent to injure element is an impossible burden to meet because juries must "get inside a person's head." As with other mental states, plaintiffs may rely on circumstantial evidence to prove the intent to injure. (See, e.g., BAJI No. 7.34 ["[m]alice, like any other fact, may be proved by direct or circumstantial evidence"]; CALJIC No. 2.02 [specific intent "with which an act is done may be shown by the circumstances surrounding the commission of the act"].)

Finally, we reject plaintiffs' and amici curiae's argument that based on language in *People v. Colantuono* (1994) 7 Cal.4th 206, 220 [26 Cal.Rptr.2d 908, 865 P.2d 704], the Legislature intended to adopt a "conscious disregard of human life and safety" standard under section 3601, subdivision (a)(1). They maintain that this standard, adopted from the concept of "act[ing] willfully" under criminal law (*People v. Colantuono, supra*, 7 Cal.4th at p. 220), achieves a balance between a narrow construction of the workers' compensation law, and protection of workers' rights.

We have long rejected the suggestion to import rules of criminal law into workers' compensation law. (*Mathews, supra,* 6 Cal.3d at p. 727, fn. 4.) "Had the Legislature intended to adopt those rules, it surely would have used the technical terms of the criminal law rather than the words it chose. Although there may be a highly developed body of law covering criminal assault, it was designed to meet different problems and effectuate different policies." (*Ibid.*) And we decline to judicially create any exceptions to the coemployee immunity granted under section 3601, subdivision (a). (*Hendy v. Losse, supra,* 54 Cal.3d at p. 738.)

## DISPOSITION

We reverse the Court of Appeal's judgment and remand the matter for proceedings consistent with this opinion.[7]

George, C. J., Kennard, J., Baxter, J., and Brown, J., concurred.

**BROWN, J.,** Concurring.—I sign the majority opinion with the understanding that the intent-to-injure requirement it articulates is limited to cases like this one where the determinative factual issue is whether the plaintiff's injury was caused by a coemployee's "willful and unprovoked physical act of aggression" (Lab. Code, § 3601, subd. (a)(1)) or, instead, by horseplay—even rough horseplay—for which workers' compensation would be the exclusive remedy. Where this distinction is critical—that is, where the conduct in question is aggressive but might also be characterized as horseplay—the language of section 3601, subdivision (a)(1) provides insufficient guidance to juries. For such cases, we must find some appropriate measure for the jury to apply, and though we might direct juries to consider whether or not the conduct was marked by hostility or ill-will, these factors ultimately turn on whether the actor harbored an intent to injure. On the other hand, where the conduct in question clearly exhibits hostility, not merely high spirits or recklessness—such as in the case of a credible threat of injury (see maj. opn., *ante,* at p. 1006, fn. 6)—I see no reason to superimpose an intent-to-injure gloss on the statutory language, and I do not read the majority opinion as doing so.

**WERDEGAR, J.,** Dissenting.—Workers need not, as a general rule, fear being sued for causing injury to coworkers. The Workers' Compensation Act, which protects employers from civil liability for on-the-job injuries, also protects employees. (Lab. Code, § 3601, subd. (a).) Under this system employees still report to work with an incentive to use due care, but

---

[7]Based on our conclusion, we need not and do not address Naas's and Parkhouse's additional claims.

sanctions for carelessness come in the form of discipline and termination rather than civil liability.

The statute at issue here, Labor Code section 3601, reflects the Legislature's judgment that an exception to the general rule barring suits against employees is warranted when an employee causes injury or death through "intoxication" (*id.*, subd. (a)(2)) or a "willful and unprovoked physical act of aggression" (*id.*, subd. (a)(1)). Both situations involve behavior that is unacceptable in the workplace and sufficiently blameworthy to justify the additional deterrent of personal liability. The former situation, intoxication, presents no difficulties. What concerns us is the latter. The majority sees the phrase "willful and unprovoked physical act of aggression" (*ibid.*) as ambiguous and purports to resolve the ambiguity by construing the phrase to refer only to those situations in which the offending employee acted with an intent to injure. I see no ambiguity. Willful and unprovoked physical aggression sometimes involves an intent to injure and sometimes does not, as when a bully uses force to intimidate without meaning to cause real injury. To declare the statute ambiguous because it does not state whether the perpetrator must intend to injure is like saying the speeding laws are ambiguous because they do not state whether they apply to drivers who are late for work. Silence on an extraneous concept does not necessarily render a statute ambiguous.

We often observe that courts should not add to the words of a statute. (See Code Civ. Proc., § 1858 ["In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted"].) The wisdom behind this maxim of construction is that statutory language embodies fine policy judgments and legislative compromise and is, for that reason, best left alone by courts. By adding to the statute the words "intent to injure," the majority in effect rejects a legislative policy judgment and replaces it with a judicial one. If the plain language of a statute seemed to have very disturbing consequences, we might be justified in looking for another construction. Unlike the majority, however, I see no plausible justification for adding to Labor Code section 3601 the concept of an intent to injure. No such requirement is necessary to shield the employer from liability, because the Legislature has already provided that whenever the employee is civilly liable, the employer is not.[1] Perhaps the majority feels an intent to injure requirement is necessary to establish a level of blameworthiness high enough to justify civil liability. But that is not for us to say; it is

---

[1] "In no event, either by legal action or by agreement whether entered into by the other employee or on his or her behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee under paragraph (1) or (2) of subdivision (a)." (Lab. Code, § 3601, subd. (b).)

exclusively a legislative matter. In any event, aggressive physical bullying is one of the common tools of racial and gender-based harassment and sometimes leads to injury, whether or not injury is specifically intended. That the Legislature might wish to deter this obnoxious behavior by the threat of civil liability should not trouble us. Finally, there is no reason to believe the Legislature foresaw, or would endorse, the tortured path the majority must take through dictionaries, out-of-state cases, and unrelated statutes to reach its destination.

For all of these reasons, I cannot join the majority in holding "as a general rule" that the language of Labor Code section 3601 "includes an intent to injure requirement." (Maj. opn., *ante*, at p. 1006.) Furthermore, in view of that holding, I am baffled by the majority's suggestion in footnote 6 that "there may be some circumstances" in which section 3601 does *not* require an intent to injure. (Maj. opn., *ante*, at p. 1006, fn. 6.) The statute cannot bear both interpretations simultaneously.