Filed 12/2/16

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| ELLIOTT HOMES, INC., | C078122 |
| Petitioner, | (Super. Ct. No. 34-2014-00164692-CU-CD-GDS) |
| v. |  |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, |  |
| Respondent; |  |
| KEVIN HICKS et al., |  |
| Real Parties in Interest. |  |

ORIGINAL PROCEEDING in mandate. Petition granted. Kevin Culhane, Judge.

Evans, Wieckowski, Ward & Scoffield, Lindy H. Scoffield, Elizabeth A. McGinty, and Heather M. Puentes for Petitioner.

Donahue Fitzgerald, Kathleen F. Carpenter, and Amy R. Gowan for California Building Industry Association and Leading Builders of America as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Lattie Malanga Libertino, Teresa A. Libertino, and Gerald B. Malanga for Real Party in Interest.


1

Real parties in interest, Kevin Hicks et al., filed an action against petitioner Elliott Homes, Inc. (Elliott), the builder of their homes, seeking damages for construction defects. Elliott moved to stay the litigation until real parties in interest complied with the prelitigation procedure set forth in what is commonly referred to as "SB 800" or "Right to Repair Act" (Act), Civil Code sections 895 through 945.5.[1] (§ 930, subd. (b).) Real parties in interest opposed the motion, arguing that the prelitigation procedure did not apply because they had not alleged a statutory violation of the Act. The trial court denied Elliott's motion for a stay, and Elliott petitioned this court for a writ of mandate compelling the trial court to vacate its order, and enter a new order granting the motion for a stay. We issued an alternative writ of mandate and stayed the proceedings in the trial court. Elliott contends the trial court erred in concluding that real parties in interest need not comply with the prelitigation procedure set forth in the Act prior to filing the underlying action and in denying the motion to stay.

We shall grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Real parties in interest, the owners of 17 single-family homes built by Elliott, filed a first amended complaint for strict products liability, strict components product liability, and negligence. Real parties in interest alleged that their homes were in a defective condition at the time they took possession, and that the defects resulted in physical damage.

---

[1] Further undesignated statutory references are to the Civil Code.

[2] On March 17, 2015, we granted the California Building Industry Association and Leading Builders of America's application to file an amicus curiae brief in support of Elliott. We now grant the California Building Industry Association and Leading Builders of America's unopposed request for judicial notice, filed March 17, 2015.

The Act "applies only to new residential units where the purchase agreement with the buyer was signed by the seller on or after January 1, 2003." (§ 938.) The purchase agreements for the homes at issue here were signed by Elliott after January 1, 2003.

The Act establishes a nonadversarial inspection and repair procedure that allows builders to attempt to resolve homeowners' construction defect claims in advance of litigation. (§§ 910-938.) Pursuant to that procedure, a homeowner must serve the builder with notice of a construction defect claim, and the builder has the opportunity to repair the purported defect within a given time period. (§§ 910, 914, 917.) If the homeowner files a lawsuit before this prelitigation procedure is completed, the builder may obtain a stay of the lawsuit. (§ 930, subd. (b).)

It is undisputed that real parties in interest did not give Elliott notice of the alleged defects or otherwise comply with the Act's prelitigation procedure before filing suit. Elliott moved to stay the litigation, which real parties in interest opposed. The trial court denied the motion, concluding that real parties in interest were not required to comply with the Act's prelitigation procedure because they had not pleaded a statutory cause of action under the Act. The court explained that "[a]lthough the pre-litigation procedures are mandatory where homeowners plead statutory SB 800 causes of action [citation], there is no similar mandate where they plead only common law causes of action encompassing actual damage. (See *Liberty Mut. Ins. Co. v. Brookfield Crystal Cove LLC* ["*Brookfield*"] (2013) 219 Cal.App.4th 98, 104-108; accord *Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, 1414-1415, 1418.)"

## DISCUSSION
### I
### Writ Relief

"A writ of mandate 'must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code of Civ. Proc., § 1086.) Writ review is deemed extraordinary and appellate courts are normally reluctant to grant it.

3

[Citations.] The Supreme Court has identified general criteria for determining the propriety of writ review. 'These criteria include circumstances in which "the party seeking the writ lacks an adequate means, such as a direct appeal, by which to attain relief" or "the petitioner will suffer harm or prejudice in a manner that cannot be corrected on appeal." [Citation.]' [Citation.]" (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1220-1221.)

Elliott claims it is entitled to the benefits of the prelitigation procedure that permits it to attempt to repair the claimed defects before real parties in interest may bring an action against it in court, but the trial court's order denies them that opportunity. If Elliott may not appeal that ruling until after judgment, the benefits of the prelitigation procedure will be lost, even if it does prevail on appeal. We conclude Elliott does not have "a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.)

## II
## Overview of the Act

The Act is comprised of five Chapters. Chapter 1 defines several terms not relevant here. (§ 895.) Chapter 2 sets forth standards for residential construction, the violation of which constitutes an actionable defect. (§§ 896, 897.) Chapter 3 imposes obligations on the builder, including the obligation to furnish a minimum one-year express limited warranty. (§§ 900-906.) Chapter 3 also imposes obligations on the homeowner, including the obligation to follow all reasonable maintenance obligations and schedules. (§ 907.) Chapter 4 prescribes a nonadversarial prelitigation procedure that allows builders to attempt to resolve homeowners' construction defect claims in advance of litigation. (§§ 910-938.) It requires a homeowner to serve the builder with notice of a construction defect claim, and gives the builder an opportunity to repair the purported defect within a given time period. (§ 912.) If the homeowner files a lawsuit before the prelitigation procedure is completed, the builder may obtain a stay of the

lawsuit.  (§ 930, subd. (b).)  Chapter 5 sets out the procedure for claims brought under the Act, including the applicable statute of limitations (§ 941), the burden of proof (§ 942), the exclusiveness of the Act (§ 943), the damages that may be recovered (§ 944), and the affirmative defenses that may be asserted (§ 945.5).  It also provides that the Act's "provisions, standards, rights, and obligations . . . are binding upon all original purchasers and their successors-in-interest."  (§ 945.)

### III
### The Scope of the Act

The question before us is whether the trial court properly denied Elliott's request for a stay of the litigation until real parties in interest comply with the prelitigation procedure set forth in chapter 4.  To answer this question, we must determine whether real parties in interest are required to comply the Act's requirements, including its prelitigation procedure, when they have not alleged a statutory violation under the Act.  As we shall explain, the answer lies in the statutory language, which is clear and unambiguous.

"When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body."  (*People v. Braxton* (2004) 34 Cal.4th 798, 810.)  " 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent.  [Citation.]  The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.'  [Citation.]  If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls."  (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818.)  If, however, the statute is susceptible to more than one interpretation, we "may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.  [Citation.]"  (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003.)

5

Real parties in interest contend that we need look no further than section 910 to determine whether they were required to comply with the statutory prelitigation procedure before filing the underlying action. Section 910 provides in relevant part: "Prior to filing an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2 (commencing with Section 896), the claimant shall initiate the following prelitigation procedures: . . ." Real parties in interest assert that "[t]he plain and ordinary meaning of the phrase 'an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2' is that an action is for violation of the SB800 building standards," and thus, it was "the Legislature's intent that the Pre-Litigation Procedures are only to be applied where a party alleges violation of the SB800 standards enumerated in Civil Code [section] 896 et seq."

As detailed above, section 910 is part of a statutory scheme, and must be construed with reference to the entire statutory scheme of which it is a part. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) Of particular significance here is section 896, which sets forth the basic scope of the claims to which the Act applies. It provides in pertinent part: "In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, . . . a builder . . . shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title." Thus, the Act applies broadly to "*any action* seeking recovery of damages arising out of, or related to deficiencies in, the residential construction," and in such an action, a homeowner's "claims or causes of action shall be limited to violation of" the standards set forth in section 896, except as otherwise specified in the Act. (§ 896, italics added.) Section 896 makes an exception for condominium conversions, "As to condominium conversions, this title does not apply to or does not supersede any other statutory or common law." Section 943 also contains an exception, "[T]his title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action

6

for fraud, personal injury, or violation of a statute." (§ 943, subd. (a).) Section 931 provides, "If a claim combines causes of action or damages not covered by this part, including, without limitation, personal injuries, class actions, other statutory remedies, or fraud-based claims, the claimed unmet standards shall be administered according to this part . . . ." Common law causes of action related to single-family homes, like those asserted by real parties in interest, are not among the claims excepted from the Act.

Section 897 confirms that the Legislature intended to create a comprehensive set of standards, and for those standards to be actionable under the Act. It provides, "The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage." (§ 897.)

Section 943 confirms that the Legislature intended to strictly limit causes of action and claims seeking to recover damages arising out of, or related to deficiencies in, residential construction. It provides in pertinent part: "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed." (§ 943, subd. (a).) Section 944 authorizes recovery of damages for "the reasonable value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair efforts, [and] the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards . . . ." Thus, the Act encompasses actions seeking to recover for repair of a defect itself or for repair of any damage caused by the defect.

Having considered the entire statutory scheme, we conclude that the Legislature intended that all claims arising out of deficiencies in residential construction, involving new residential units where the purchase agreement was signed on or after January 1, 2003 (§ 938), with limited exceptions not relevant here, be subject to the standards and requirements of the Act; homeowners bringing such claims must give notice to the builder and engage in the prelitigation procedure set forth in chapter 4 of the Act prior to

7

filing suit in court; and where the complaint alleges deficiencies in construction that constitute violations of the standards set out in chapter 2 of the Act, the claims are subject to the Act, and the homeowner must comply with the prelitigation procedure, regardless of the theory of liability asserted in the complaint.

The legislative history is consistent with our interpretation of the Act's scope. The analysis by the Senate Judiciary Committee states: "This bill would make major changes to the substance and process of the law governing construction defects. It is the product of extended negotiations between various interested parties. Among other things, the bill seeks to respond to concerns expressed by builders and insurers over the costs associated with construction defect litigation, as well as concerns expressed by homeowners and their advocates over the effects of a recent Supreme Court decision that held that defects must cause actual damage prior to being actionable in tort. [*Aas v. Superior Court* (2000) 24 Cal.4th 627]." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, p. 1.) "This bill would provide that any action against a builder . . . seeking recovery of damages arising out of, or related to deficiencies in, residential construction, . . . shall be governed by detailed standards set forth in the bill relating to the various functions and components of the building." (*Id.* at p. 2.) "This bill would establish a mandatory procedure prior to the filing of a construction defect lawsuit. This procedure would provide the builder with the right to attempt a repair of the defect prior to litigation . . . ." (*Id.* at pp. 2-3.) "This bill would set detailed standards . . . . Except in certain specified circumstances, the bill would provide that these standards govern any action seeking recovery of damages arising out of or related to construction defects. The bill would provide that any function or component not specifically addressed by the standards shall be actionable if it causes damage. As a result, the bill would preserve homeowners' ability to recover for defects that cause damage that are not otherwise covered by the standards. [¶] In addition, except where explicitly specified otherwise, liability would accrue under the standards regardless of

8

whether the violation of the standard had resulted in actual damage or injury." (*Id.* at p. 4.) Describing the prelitigation procedure and the builder's right to repair, the analysis provides: "The bill establishes a mandatory process prior to the filing of a construction defect action. The major component of this process is the builder's absolute right to attempt a repair prior to a homeowner filing an action in court." (*Id.* at p. 5.)

In *Aas v. Superior Court, supra*, 24 Cal.4th 627, referenced in the legislative history quoted above, our Supreme Court held that construction defects in residential properties that did not result in actual property damage were not actionable in tort. (*Id.* at p. 632.) Thus, after *Aas,* homeowners could not recover in tort for costs of repair or the diminution in value of the homes arising from construction defects that had not caused property damage. (*Id.* at pp. 632-633.) Needless to say, *Aas* represented a substantial victory for the building industry. Under the construction urged by real parties in interest, the Act created new statutory causes of action for defects that have not yet caused damage, while leaving intact the common law causes of action available once property damage has occurred. Under such a construction, the building industry gained nothing under the Act. To the contrary, it lost. It defies common sense to think that building groups would have negotiated such a result. Moreover, the construction urged by real parties in interest fails to respond to concerns expressed by builders and insurers over the costs associated with construction defect litigation, which the legislative history indicates the bill sought to address.

Consistent with the statutory language itself, the legislative history establishes that the Legislature intended that any action against a builder seeking to recover damages arising out of, or related to deficiencies in, residential construction is subject to the Act's prelitigation procedure.

The trial court relied on *Liberty Mutual Ins. Co. v. Brookfield Crystal Cove LLC, supra,* 219 Cal.App.4th at pages 104-108 (*Liberty Mutual*) as the basis for its conclusion that real parties in interest were not required to engage in the Act's prelitigation

9

procedure because "they plead only common law causes of action encompassing actual damage."[3]  In that case, Eric Hart purchased a new home built by Brookfield.  (*Liberty Mutual,* at pp. 100-101.)  A few years later, a pipe in the home's sprinkler system burst, causing extensive damage.  (*Id.* at p. 101.)  Brookfield acknowledged its liability for, and repaired, the damage to Hart's home.  (*Ibid.*)  Hart moved into a hotel for a few months while the repairs were made, and its insurer Liberty Mutual paid for the hotel and other relocation expenses.  (*Ibid.*)  Liberty Mutual then filed a subrogation action against Brookfield to recover the expenses it paid.  (*Ibid.*)  The operative complaint alleged causes of action for strict liability, negligence, breach of contract, breach of warranty, equitable estoppel, and declaratory relief.  (*Id.* at pp. 101-102.)  Brookfield demurred to the complaint, arguing it was time-barred under the Act.  (*Liberty Mutual,* at p. 100.)  The trial court sustained the demurrer and dismissed the complaint.  (*Ibid.*)  The Court of Appeal reversed, holding that "the Act does not eliminate a property owner's common law rights and remedies, otherwise recognized by law, where, as here, actual damage has occurred," and thus, "Liberty Mutual's complaint in subrogation, based on Hart's right to recover actual damages, states causes of action."  (*Id.* at p. 101.)

In their return to the petition for writ of mandate, real parties in interest assert that *Liberty Mutual* is "immaterial," and we need not consider whether it was correctly decided because unlike *Liberty Mutual*, whether real parties are precluded under the Act from pursuing their common law causes of action is not before us.  According to real parties in interest, "It could have been, but Elliott did not demur to these causes of action.  Instead, it brought forth a Motion to Stay.  [¶]  Accordingly, the question before the trial

---

**3**      The trial court also cited *Burch v. Superior Court, supra*, 223 Cal.App.4th at pages 1414-1415, 1418.  The court in *Burch* agreed with *Liberty Mutual's* holding without any independent analysis of the issue.  (*Burch,* at p. 1418.)  Accordingly, we shall limit our discussion to *Liberty Mutual*.

court was, as follows:  given that [real parties in interest] only pled common law causes of action and not an SB800 cause of action, were [they] required to complete the SB800 statutory pre-litigation procedures before litigating the common law causes of action?" We agree that we need not determine whether real parties in interest can pursue their common law causes of action in the first instance; rather, the issue before us is:  assuming that real parties in interest can pursue their common law causes of action, were they required to comply with the Act's prelitigation procedure before initiating the underlying lawsuit.  We disagree, however, with real parties in interest claim that *Liberty Mutual* is immaterial to our analysis of that issue.[4]  In concluding that "the Act does not provide the exclusive remedy in cases where actual damage has occurred," (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 109) the *Liberty Mutual* court found that "the statutory language shows Liberty Mutual's subrogation claims [(common law causes of action arising from actual damages)] are not covered by the Right to Repair Act," and thus, Hart was not subject to the time limitations set forth therein.  (*Id.* at pp. 104-105.)  Here, real parties in interest assert and the trial court found that common law claims arising from actual damages are not covered by the Act, and thus, they were not subject to the prelitigation procedure set forth therein.  Moreover, the trial court cited *Liberty Mutual* as the basis for its decision.  Thus, we shall consider *Liberty Mutual's* finding that common law claims arising from actual damages are not covered by the Act and explain why we respectfully disagree with it.

In interpreting the scope of the Act, the *Liberty Mutual* court relied on the " 'general rule' " that statutes should not be interpreted to alter or abrogate the common

---

[4]     Whether the Act precludes a homeowner from bringing common law causes of action for defective conditions that resulted in physical damage to the home is currently pending before our Supreme Court in *McMillin Albany, LLC v. Superior Court* (2015) 239 Cal.App.4th 1132, review granted November 24, 2015, S229762.

11

law unless its language clearly and unambiguously evidences an intention to do so. (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 105.) As previously discussed, section 896 states that the Act broadly applies to "*any action* seeking recovery of damages arising out of, or related to deficiencies in, . . . residential construction," and in such an action, a homeowner's "claims or causes of action shall be limited to violation of" the standards set forth in section 896, except as otherwise specified in the Act. (Italics added.) In determining that Brookfield's claims were not covered by the Act, the *Liberty Mutual* court failed to analyze the language of section 896. (*Liberty Mutual,* at p. 108.) Instead, it analyzed Brookfield's argument, which it rejected as "circular." (*Ibid*.) "Brookfield argues the language 'any action' means that the present case must fall within the Right to Repair Act. Brookfield's argument, however, is circular; Brookfield's argument is essentially that any action arising out of the Act is an action under the Act." (*Ibid.*) Section 896 does not provide that "any action arising out of the Act is an action under the Act." To the contrary, it provides that "[i]n any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, . . . a builder . . . shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title." (§ 896.)

The statutory language contained in section 896 as well as the code sections previously discussed, i.e. sections 897, 931, 943, 944, clearly and unequivocally expresses the legislative intent that the Act apply to all actions "seeking recovery of damages arising out of, or related to deficiencies in, . . . residential construction," (§ 896) except as specifically set forth in the Act. The Act does not specifically except actions arising from actual damages. To the contrary, it authorizes recovery of damages for, among other things, "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards . . . ." (§ 944.)

12

IV

Real Parties in Interests' Claims Fall Within the Scope of the Act

Here, the operative first amended complaint alleged residential construction defects in components or functions for which standards have been established in section 896.[5] Thus, real parties in interests' claims fall within the scope of the Act. Section 910 provides that before a homeowner files "an action against any party alleged to have contributed to a violation of the standards set forth in Chapter 2," the homeowner must give written notice to the builder of the claim that the construction of the residence violates any of the standards in that chapter. If a homeowner fails to provide such notice or otherwise comply with the prelitigation procedure, the builder may bring a motion to stay any subsequent court action until the homeowner complies with that procedure. (§ 930, subd. (b).) Because real parties in interest did not notify Elliot of their claims or otherwise comply with the statutory prelitigation procedure, Elliott is entitled to a stay of the action until the statutory prelitigation process has been completed. Accordingly, we will grant Elliott the relief sought in the petition.

DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of November 6, 2014, denying Elliott's motion to stay the litigation, and enter a new order granting the motion and staying the litigation until the parties have satisfied the requirements of the statutory prelitigation procedure set forth in chapter 4 of the Act (§§ 910-938). The stay previously issued by this court shall be dissolved as of the date

---

[5] According to real parties in interest, the "deficiencies manifested as, but are not limited to, the following items: [¶] waterproofing defects; window and door defects; framing defects; tub and shower door defects; roofing and sheet metal defects; stucco defects; general deviation from building plans and specifications; general deviation and non compliance with applicable building codes and standards and building practices." Section 896 sets forth standards for such functions and components. (§ 896, subds. (a)-(g).)

this opinion is filed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

                                                              /s/
                                                    Blease, Acting P. J.

We concur:


    /s/
Nicholson, J.


    /s/
Murray, J.