Filed 4/26/17; pub. order 5/18/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| ANN E. GILLOTTI, Individually and as Trustee, etc., | C075611 |
| Plaintiff and Appellant, | (Super. Ct. No. TCU083162) |
| v. | |
| EUGENE W. STEWART et al., | |
| Defendants and Respondents. | |

In this construction defect lawsuit by a homeowner, the jury found the general contractor -- defendant Estate of William G. Davidson, formerly Davidson Construction (Davidson) -- negligent and liable for some, but not all, alleged violations of building standards under the Right to Repair Act, Civil Code section 895, et seq. (the Act). The estate is a proper party where the decedent was protected by insurance. (Prob. Code, § 550.) (Unless otherwise noted, statutory references that follow are to the Civil Code.)

1

The estate is a proper party where the decedent was protected by insurance. (Prob. Code, § 550.) The Act makes the builder who sells homes liable for violations without proof of negligence (§§ 911, 942), while general contractors and subcontractors not involved in home sales are liable only if the plaintiff proves they negligently caused the violation in whole or part (§§ 911, subd. (b), 936).

The jury found the grading subcontractor -- defendant Rick Gerbo dba Gerbo Excavating (Gerbo) -- was not negligent in any respect.

The trial court, not the jury, found the builder/seller -- Knotty Bear Development, Inc. and Knotty Bear Construction, Inc. (collectively Knotty Bear) -- liable, after Knotty Bear failed to appear for trial.

On appeal, plaintiff Ann E. Gillotti, individually and as Trustee for the Ann E. Gillotti and Michael W. Quade Trust, argues the trial court improperly construed the Act as barring a common law negligence theory against Gerbo for tree damage resulting from Gerbo's adding soil over tree roots to level the driveway on the sloped lot. Plaintiff maintains the trial court erred in failing to follow *Liberty Mutual Insurance Company v. Brookfield Crystal Cove LLC* (2013) 219 Cal.App.4th 98 (*Liberty Mutual*), which held the Act does not eliminate common law claims where construction defects caused actual damage. (*Id*. at p. 104.)

We allowed amicus curiae briefing by California Building Industry Association (CBIA) and Building Industry Legal Defense Foundation (BILDF) in support of defendants, and by Consumer Attorneys of California (CAOC) in support of plaintiff. We deny CBIA's and BILDF's request for judicial notice of the entire legislative history of the Act; the request fails to comply with our local rule asking for legal authority that each document is cognizable. (Ct. App., Third Dist., Local Rules of Court, rule 4, citing *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc*. (2005) 133 Cal.App.4th 26.) Nevertheless, we take judicial notice of portions of the legislative history, as have other appellate opinions.

2

We find persuasive, though not binding or precedential, our disagreement with *Liberty Mutual*, though in a different context, in a recently published opinion currently under review in the California Supreme Court -- *Elliott Homes, Inc. v. Superior Court (Hicks)* (2016) 6 Cal.App.5th 333, 344 (*Elliott*), review granted March 15, 2017, S239804.  (Cal. Rules of Court, rules 8.1105(e), 8.1115(e)(1) [published opinions for which the Supreme Court has granted review have no binding or precedential value but may be cited for potential persuasive value only].)  *Elliott* is on grant/hold while the Supreme Court decides its pending review of a Fifth District opinion that also disagreed with *Liberty Mutual -- McMillin Albany LLC v. Superior Court* (2015) 192 Cal.Rptr.3d 53 (*McMillin*), review granted November 24, 2015, S229762.  The Supreme Court granted review of *McMillin* before the July 2016 effective date of the new rule allowing citation of review-granted opinions.  In *Elliott*, we noted pendency of *McMillin* review but did not cite it for persuasive value.  (*Elliott, supra*, 6 Cal.App.5th at p. 343, fn. 4, rev. granted.)

Plaintiff also argues it must be allowed to pursue a common law claim for tree damage because tree damage is not covered by the Act.  However, plaintiff fails to show the tree damage was not covered by the Act.  (§ 943, subd. (a) [no other cause of action for a claim covered by the Act is allowed, except as provided in the Act, e.g., fraud claims].)  The tree damage was recoverable under section 897 of the Act, which provides: "The standards set forth in this chapter are intended to address every function or component of a structure.  To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage."  Plaintiff's presumption that the tree damage was not recoverable under the Act is based on an improper addition of limiting language not found in section 897, limiting "damage" to "damage to the structure."  This additional language made its way into the special verdict form for reasons not made clear on appeal.

Plaintiff does not challenge the verdict form on appeal.  Nor do we see any

3

miscarriage of justice warranting reversal.  (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)  The jury found Gerbo was not negligent in *any* respect, even when the jury found building standards were violated.

Plaintiff also challenges the trial court's post-trial orders (1) denying motions for new trial or judgment notwithstanding the verdict (JNOV) on grounds of insufficiency of evidence; and (2) ordering plaintiff to pay Gerbo's expert witness fees due to plaintiff not obtaining a judgment more favorable that Gerbo's settlement offer (Code Civ. Proc., § 998).  We conclude plaintiff fails to show any basis for reversal.

Finally, plaintiff challenges the trial court's order denying in part plaintiff's motion for attorney fees as against Knotty Bear, for work done by plaintiff's attorney-husband-cotrustor (Michael Quade) due to Quade's pecuniary interest in the litigation.  Again, plaintiff fails to show a basis for reversal.

Accordingly, we affirm the judgment and post-trial orders.

FACTS AND PROCEEDINGS

When builder/seller Knotty Bear failed to appear for trial, the court struck its answers and cross-complaints and heard evidence about its liability at the same time the jury heard evidence about the liability of Gerbo and Davidson.  The court told the jurors that the judge would be deciding all issues regarding Knotty Bear, except that if the jurors found liability on the part of Gerbo or Davidson, they would be asked to determine what percentage of liability was attributed to "others," meaning Knotty Bear.  The jurors ultimately found "others" (Knotty Bear) 80 percent responsible; Davidson 20 percent responsible, Gerbo zero percent, and plaintiff zero percent.

In 2005, plaintiff purchased from Knotty Bear a newly-constructed vacation home in Truckee.  At closing, plaintiff learned that Knotty Bear had obtained two variances from the Truckee Sanitary District (TSD) -- one allowed the slope of the sewer lateral to be less than the normal grade (to divert water away from the structure), and the other

4

allowed less than normal coverage of soil over the sewer line (which protects against pipes freezing).

After moving into the house in 2005, plaintiff noticed problems with water in the crawlspace under the house and around the home's perimeter, window leaks, moisture under doors and between window panes, water in the bathroom light fixture below the garage floor, drywall cracks, and crumbling of the surface of a deck. In 2012, plaintiff had to remove two large trees, each about 100 feet tall, from the front yard because branches were falling from them. Plaintiff put on evidence that the trees were dying due to addition of mounds of soil on top of the tree roots in order to level the driveway on this sloped lot.

We address evidence involving Davidson *post*, in response to plaintiff's substantial evidence argument.

Gerbo testified he went to the property in October 2004, cut the pad for the house and excavated for the sewer lateral. He knew a permit was required and he did not have a permit. It was not his responsibility as subcontractor to obtain a permit. He took measurements based on the elevation of pad, what the elevation of the stem wall would have to be, and knowing the elevation of the sewer lateral, so if the foundation wall was built to the appropriate height, the requisite two-percent slope to divert water away from the house would be achieved while allowing the pipe to be covered by the standard 30 inches of soil so that the pipe would not freeze. When Gerbo returned in June 2005 to finish his work, he discovered the foundation wall and stem wall were not built to the right height. Gerbo did the best he could. He knew that Knotty Bear had to obtain a variance, but Knotty Bear did not consult Gerbo about the variance, which Gerbo viewed as the concern of Knotty Bear's principal, Eugene Stewart (who has since declared bankruptcy).

Gerbo also performed the excavation work for the driveway. The builder's plans required him to construct the driveway around the trees. Due to the steep slope of the

property, Gerbo had to backfill dirt to make the driveway level. Gerbo testified he knew that covering tree root flares with dirt could kill the trees. He did his best to avoid damaging the trees, which were right next to the driveway. He placed dirt only on the western side of the trees.

Plaintiff's expert John Walters testified he found multiple violations of the Act's building standards. He opined Gerbo was reckless in grading the pad in October. Plaintiff's expert arborist, Ryan Kramer, testified that three-quarters of the trees' root system had been covered with soil, which was "kind of a death sentence for trees."

Defense experts attributed responsibility to the builder Knotty Bear for errors made by the builder's engineers. Defense expert arborist Randall Frizzell opined addition of the soil, though it had an impact, was not fatal to the trees.

Plaintiff on appeal claims she asked for instruction and special verdict on common law negligence. However, she cites nothing in the record on this point. She proceeds on an appellant's appendix and cites only to a page of a declaration from Quade in support of plaintiff's motion for new trial, stating he requested that the jury be presented with general negligence as well as negligence under the Act to recover for the tree damage, but the trial court refused. The reporter's transcript shows there were multiple off-the-record discussions later summarized on the record. The parties do not direct our attention to any discussion pertinent to this issue on the record.

Since neither Gerbo nor Davidson were engaged in selling homes, they would be liable under the Act only if plaintiff proved they negligently caused, in whole or in part, violation of the Act's building standards. (§ 936.) The trial court instructed the jury on negligence.

In accordance with section 897, which states "To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage," the trial court instructed the jury on this point but inexplicably added to the special verdict form words not found in the statute -- i.e., that there must be damage

6

"to the structure." Thus, the special verdict form excluded the tree damage. Yet plaintiff does not challenge this revision of statutory language on appeal, nor does it appear plaintiff did so in the trial court.

In initial closing argument to the jury, Quade skirted the issue of tree damage, telling the jury, "I'm trying to move things along and make it quicker. If you add up [the claimed damages written on a chart], and the one item that's not on here is the tree, which is the $150,000 item that Mr. Kramer testified about, [you get the total amount of claimed damages]." Defense counsel argued it was Knotty Bear's principal -- Eugene Stewart -- not Gerbo, who decided where to put the driveway, and Gerbo did the best he could and was not responsible for the trees. Plaintiff in rebuttal said Gerbo knew piling dirt on tree root flares would harm the trees.

During deliberations, the jurors asked the court, "What question [on the verdict form] addresses the tree damage/loss of the trees?" Instead of answering the question, the trial court gave each side five minutes to argue the point to the jury.

Plaintiff argued: "As far as the tree is concerned, I believe there's two categories where it falls under: One is question number 9 [on the verdict form], and that one says: Does the subject home fail to meet the following building standards? And the standard itself says: Hardscape, including paths, patios, irrigation systems and landscaping systems and drainage systems, and it continues." What plaintiff failed to acknowledge in addressing the jury was that the statute continues on to say, as spelled out in the verdict form, that such features shall not be installed in such a way as to cause water or soil to "come in contact with the structure so as to cause damage to another building component." This on its face is inapplicable to tree damage. Nevertheless, plaintiff continued arguing to the jury: "And in this particular case, part of the hardscaping was the rocks that were put along the driveway and the dirt that was piled in that area to create that wall as well as for the driveway. So that's part of the hardscaping, and that's why

7

896(a)(9) would involve the tree.  [¶]  In addition to that, it's also part of the landscaping system. . . .

"So that is the short answer here.  I'm going to be shorter than five minutes, because I know you all are working hard and you don't want to hear any more about me.

"The other question that I think it triggers is question 20 [on the verdict form] which talks about, is there any other function or component of the structure not addressed by the preceding questions that's caused damage."  Plaintiff failed to acknowledge that question 20 was also inapplicable on its face because it said "damage to the structure." Plaintiff continued:  "And I think that in this instance the tree itself falling and waiting -- if we would have waited for the tree to fall to end up significantly damaging the house makes no sense the way the rules are written so that you're trying to minimize the type of damage.

"So I think those two standards.  I think the first one is more applicable, but the second one is kind of a catch-all."

Defense counsel argued the tree damage was not within the scope of the Act as described in the special verdict form.

The jury returned special verdicts finding the home did *not* violate some of the Act's building standards alleged by plaintiff, but did violate others, but Gerbo was not negligent in any respect.

The jury made the following findings in favor of plaintiff:

[Verdict question #1].  The home failed to meet the building standard (§ 896, subd. (a)(1)) that a door shall not allow unintended water to pass beyond, around, or through the door or its designed or actual moisture barriers.  Davidson was negligent and caused the violation in whole or part.  This question did not involve Gerbo.

[Verdict question #6].  The home failed to meet building standard (§ 896, subd. (a)(6)), that decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow unintended water to pass within the systems themselves and

8

cause damage to the systems, including framing, substrate, flashing, and sheathing. Davidson was negligent and caused the violation in whole or part. Gerbo was not negligent.

[Verdict question #9]. The home failed to meet building standard (§ 896, subd. (a)(9)), that hardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems, that are installed as part of the original construction, shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the structure so as to cause damage to another building component. But Gerbo was not negligent. The jury was not asked about Davidson.

[Verdict question #13]. The home failed to meet building standard (§ 896, subd. (a)(13)), that retaining walls and site walls, and their associated drainage systems, shall only allow water to flow beyond, around, or through the areas designated by design. But Gerbo was *not* negligent.

[Verdict question #15]. The home failed to meet building standard (§ 896, subd. (b)(2)), that foundations, load bearing components, and slabs shall not cause the structure, in whole or in part, to be structurally unsafe. Davidson was negligent and caused the violation in whole or part. Gerbo was *not* negligent.

The jury was asked in question #20: "Is there any other function or component of the structure not addressed by the preceding questions 1 through 19 that has caused damage *to the structure*." (Italics added.) The jury answered No.

The jury determined the total amount of damages for the foregoing violations was $84,131.29, without taking into consideration any reduction of damages due to negligence of the plaintiff, if any. The jury then found plaintiff was NOT negligent. The jury allocated liability 20 percent to Davidson, zero to plaintiff, zero to Gerbo, and 80 percent to "all others."

After the jury verdict, the trial court found Knotty Bear liable for fraud and negligent misrepresentation, as well as other violations of the Act, and entered a

9

judgment in favor of plaintiff against Knotty Bear for $386,758.04. The trial court also entered judgment in favor of Davidson on its cross-complaint against Knotty Bear for indemnity. The court found that the defects proven against Davidson were attributable in material part to choices and designs selected by Knotty Bear. The court also ordered Knotty Bear to pay plaintiff $55,000 to cover the costs of investigation and removal of the distressed trees, and for loss of aesthetic value attributable to their removal. The court found the claimed costs to replace the trees to be speculative, and improper under industry standards applicable to valuing trees of this age and size.

Plaintiff moved for JNOV or a new trial on grounds the trial court improperly barred a common law negligence theory, and the evidence was insufficient to support findings in favor of Gerbo and Davidson.

The trial court denied the motions. Regarding the court's exclusion of a common law negligence theory, the court stated it did not err because:

"The Right to Repair Act specifically provides that no other causes of action are allowed. See Civil Code § 943. Its 'catch-all' provision Section 897, which was argued to the jury by plaintiffs, plugs any gaps left for defects not covered within the comprehensive list within Section 896. Consequently, there was no error in the decision not to submit a general negligence cause of action to the jury." The court said in a footnote that plaintiff argued the judgment imposing liability on Knotty Bear created an inconsistent verdict because it allowed recovery for tree damage due to Knotty Bear's general negligence, but plaintiff "reads too much into what amounts to sloppy drafting by this court."

The court noted its decision conflicted with *Liberty Mutual, supra*, 219 Cal.App.4th 98 -- which was issued shortly after the jury verdict in this case, but was not cited by the parties in their post-trial motions. *Liberty Mutual* held the Act does not eliminate common law rights and remedies where actual damage has occurred and therefore the Act's statute of limitations did not bar the homeowner's insurance company

10

from filing a subrogation action to recover hotel expenses it paid for the homeowner to live during repair of flooding damage to the home due to construction defects. (*Id.* at pp. 100, 108.) The appellate court held the Act covered the defect but did not preclude a subrogation claim asserting common law causes of action. (*Id.* at pp. 102, 105.) Another court accepted *Liberty Mutual*'s holding but without analysis. (*Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, 1418.)

The trial court here said *Liberty Mutual* was wrongly decided and, because it came from a different appellate district, was not binding on the trial court because "[o]therwise, you'd never end up with splits of authority." (But see, *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [all Court of Appeal decisions are binding on all superior courts].) The trial court also said the Act was a negotiated compromise among various constituencies, and it was naïve to assume, as the court did in *Liberty Mutual*, that the building industry would agree to strict liability for builders and give up the previous rule (that defects were not actionable unless they caused damage), without getting something in exchange.

The trial court denied JNOV, finding substantial evidence supported the verdict.

Gerbo sought to recover its expert witness fees from plaintiff on the ground that plaintiff did not obtain a more favorable judgment than Gerbo's settlement offer under Code of Civil Procedure section 998. Plaintiff sought to strike the fees. As we discuss *post*, plaintiff argued the offer was ambiguous, but the trial court disagreed and awarded the fees, though it reduced the amount.

Plaintiff sought to recover contractual attorney fees as against Knotty Bear only. In February 2014, the trial court issued an order awarding some but not all of the requested fees. The court denied fees for work performed by attorney Michael Quade on the grounds that he represented his wife Ann Gillotti in her capacity as Trustee of the Ann Gillotti and Michael Quade Trust, owner of the single family residence at issue in this case. Said the court: "During trial, attorney Quade repeatedly referred to himself

11

and his wife Ms. Gillotti as owners of the vacation home, and repeatedly touted the benefits to their family of owning the vacation home which had been diminished as a result of the alleged construction defects.  It was apparent throughout the case that Mr. Quade was representing not only his wife, but his own interests in the vacation home that is owned by their joint trust."  Nevertheless, the court awarded fees for work by other persons at Quade's law firm.  The court awarded $165,000 in attorney fees.

DISCUSSION

I

*Statutory Construction of the Act*

A.  <u>The Act Precludes Common Law Claims for Actual Damage</u>

Plaintiff argues the Act does not preclude the common law negligence claim for damaged trees, because the Act is not the exclusive remedy where actual damage has occurred.  We disagree.

Statutory construction of the Act is a question of law that we review de novo. (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 102.)  Ordinarily, the words of the statute are the most reliable indicator of legislative intent.  (*Ibid*.)  If the statutory language is ambiguous, we may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.  (*Ibid*.) If the language is ambiguous, we may also consider the legislative history and wider historical circumstances in ascertaining legislative intent.  (*Ibid*.)  We may also refer to legislative history to confirm our interpretation of the plain language of a statute. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1046.)

The Legislature enacted the Act in 2002 (Stats. 2002, ch. 722 (Sen. Bill 800)) to abrogate *Aas v. Superior Court* (2000) 24 Cal.4th 627 (*Aas*).  (*Greystone Homes, Inc. v. Midtec, Inc*. (2008) 168 Cal.App.4th 1194, 1202 (*Greystone*).)  *Aas* held homeowners

12

could not recover damages in negligence from builders for construction defects that had not yet caused property damage or personal injury because, while tort law afforded a remedy for property damage and personal injury, the "economic loss rule" precluded recovery for items such as the difference between price paid and value received, and deviations from standards of quality that had not resulted in property damage or personal injury. (*Aas, supra*, 24 Cal.4th at pp. 635-636.)

The Act establishes a set of building standards for new residential construction (§§ 896, 897), prescribes prelitigation procedures to allow repair of defects without litigation (§§ 910-936), and provides homeowners with a statutory cause of action against (1) "builder[s]" involved in the sale of homes (§ 911), and (2) others (general contractors and subcontractors) *not* involved in sale of homes, for violation of the building standards. (§§ 896, 911, 936.)

As against "builder[s]" who sell homes, the homeowner need only demonstrate that the home does not meet the applicable building standard, and "No further showing of causation or damages is required to meet the burden of proof regarding a violation of a standard set forth in Chapter 2 (commencing with Section 896), provided that the violation arises out of, pertains to, or is related to, the original construction." (§ 942.)

As against general contractors, subcontractors, and others not involved in selling homes, the homeowner must prove that they "caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract. . . ." (§ 936.)

Upon a showing of violation of an applicable standard, the Act allows the homeowner to recover economic losses without having to show property damage or personal injury. (§§ 896, 942.) In that instance, the Act abrogates the economic loss rule, thus legislatively superseding *Aas*. (*Greystone, supra*, 168 Cal.App.4th at p. 1202.)

13

However, the Act provides remedies where property damage has occurred and is the exclusive remedy for construction defects within its scope, subject to specified exceptions.

Thus, section 896 provides in part: "*In any action seeking recovery of damages* arising out of, or related to deficiencies in, the residential construction, design, specifications, surveying, planning, supervision, testing, or observation of construction, a builder, and to the extent set forth in Chapter 4 (commencing with Section 910), a general contractor, subcontractor, material supplier, individual product manufacturer, or design professional, shall, except as specifically set forth in this title [the Act], be liable for, and *the claimant's claims or causes of action shall be limited to* violation of, the following standards, except as specifically set forth in this title. . . ." (Italics added.) Section 896 covers a panoply of specific building standards, such as roofs, foundations, windows and doors, paths and patios, landscaping, drainage, exterior siding, retaining walls, plumbing, sewer systems, soil issues, electrical systems, etc.

Section 897 provides: "The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage."

Section 943 provides: "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed. In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute. . . ."

The referenced section 944 authorizes recovery of "the reasonable cost" of repairing "any damages" resulting from the failure of the home to meet the standards.

The Act specifies exceptions, for example, for condominium conversions, breach of contract, fraud, personal injury, other statutory remedies, and class actions (§§ 896

14

["As to condominium conversions, this title does not apply to or does not supersede any other statutory or common law"], 931 [claims not covered by the Act include "personal injuries, class actions, other statutory remedies, or fraud-based claims"], 941 [Act's limitations period does not apply to contract claims], 943 [Act does not apply to actions for breach of contract, fraud, personal injury, or violation of a statute].)

If a plaintiff pursues one of these other remedies in addition to a statutory claim under the Act, "the claimed unmet standards shall be administered according to this part." (§ 931.)

The statutory scheme thus covers claims arising out of deficiencies in residential construction, including defects that cause actual damage, subject to statutory exceptions inapplicable here.

The legislative history is consistent with this interpretation, as noted in *Elliott, supra*, 6 Cal.App.5th at pages 341-342, review granted. The analysis by the Senate Judiciary Committee states: "This bill would make major changes to the substance and process of the law governing construction defects. It is the product of extended negotiations between various interested parties [including builder groups and Consumer Attorneys of California (*Anders v. Superior Court* (2011) 192 Cal.App.4th 579, 592)]. Among other things, the bill seeks to respond to concerns expressed by builders and insurers over the costs associated with construction defect litigation, as well as concerns expressed by homeowners and their advocates over the effects of a recent Supreme Court decision that held that defects must cause actual damage prior to being actionable in tort. [*Aas v. Superior Court*[, *supra*,] 24 Cal.4th 627.]" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 1, 3.) "This bill would provide that any action against a builder . . . seeking recovery of damages arising out of, or related to deficiencies in, residential construction, . . . shall be governed by detailed standards set forth in the bill relating to the various functions and components of the building." (*Id*. at p. 2.)

15

The referenced case, *Aas v. Superior Court, supra*, 24 Cal.4th 627, held that construction defects in residential properties that did not result in actual property damage were not actionable in tort. (*Id*. at p. 632.) Thus, after *Aas*, homeowners could not recover in tort for costs of repair or the diminution in value of homes arising from construction defects that had not caused property damage. (*Id*. at pp. 632-633.) *Aas* was a substantial victory for the building industry. Under the construction urged by plaintiff, the Act created new statutory causes of action for defects that have not yet caused damage, while leaving intact the common law causes of action available once property damage has occurred. Under such a construction, the building industry gained nothing from the Act. To the contrary, it lost. It defies common sense to think that building groups would have negotiated such a result. Though legislation is an expression of policy rather than a negotiated settlement between opposing interests, the legislative history shows this bill represents a "consensus" to address the concerns of builders groups and consumer attorneys. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 1, 3.) Moreover, the construction of the Act urged by plaintiff fails to respond to concerns expressed by builders and insurers over the costs associated with construction defect litigation, which the legislative history indicates the bill sought to address. (*Elliott, supra*, 6 Cal.App.5th at p. 342, rev. granted.)

Consistent with the statutory language itself, the legislative history establishes that the Legislature intended the Act to cover damages caused by the construction defects.

Nevertheless, plaintiff argues this appeal presents a "pure issue of law" that the trial court refused to follow *Liberty Mutual*, which held the Act does not eliminate common law remedies where actual damage has occurred and therefore did not bar the common law claims in the insurer's subrogation action to recover from the builder for payments made under a homeowner's policy.

We respectfully disagree with *Liberty Mutual* and find persuasive our analysis of *Liberty Mutual*, though in a different context, in *Elliott, supra*, 6 Cal.App.5th 333 (rev. granted), where actual damages occurred, and we held the Act's prelitigation procedures were mandatory for homeowners' common law claims in a case where the builder did not challenge the homeowners' right to pursue common law claims but merely sought a stay until the homeowners complied with the Act's prelitigation procedures allowing builders an opportunity to repair defects before a lawsuit is filed. (§§ 910-938; *Elliott, supra*, 6 Cal.App.5th at p. 339, rev. granted.)

The homeowners in *Elliott* cited section 910, which requires plaintiffs to follow the Act's procedures "[p]rior to filing an action . . . [for] violation of [the Act's building] standards . . . ." The homeowners argued this meant the Act's procedures apply only if a plaintiff chooses to proceed with a statutory claim under the Act, and they chose not to proceed under the Act. (*Id*., 6 Cal.App.5th at p. 340, rev. granted.) The homeowners argued *Liberty Mutual* was immaterial because Elliott did not demur to the common law claims but just wanted the Act's prelitigation procedures to apply. (*Elliott, supra*, 6 Cal.App.4th at p. 343, rev. granted.) We agreed we did not need to determine whether the homeowners could pursue their common law claims in the first instance, but we disagreed that *Liberty Mutual* was immaterial. (*Ibid*.) The homeowners in *Elliott* asserted, and the trial court relied on *Liberty Mutual* in finding, that common law claims arising from actual damages are not covered by the Act and thus were not subject to the Act's prelitigation procedures. (*Elliott, supra*, 6 Cal.App.5th at p. 344.)

The *Liberty Mutual* court relied on the general rule that statutes should not be interpreted to alter or abrogate the common law unless the language clearly and unambiguously shows an intention to do so. (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 105.) However, section 4 says "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this [Civil] code. The code establishes the law of this State respecting the subjects to which it relates, and

17

its provisions are to be liberally construed with a view to effect its objects and to promote justice."

Section 896 provides that "[i]n any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, . . . a builder . . . shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to, violation of, the following standards, except as specifically set forth in this title." (§ 896.) (*Elliott, supra*, 6 Cal.App.5th at p. 344, rev. granted.)

The *Liberty Mutual* court failed to analyze the language of section 896. It instead said: "Brookfield [the builder] argues the language 'any action' means that the present case must fall within the Right to Repair Act. Brookfield's argument, however, is circular; Brookfield's argument is essentially that any action arising out of the Act is an action under the Act." (*Id*., 219 Cal.App.4th at p. 108.)

The statutory language contained in section 896, as well as the other sections (897, 931, 941, 943, 944) clearly and unequivocally expresses the legislative intent that the Act apply to all actions seeking recovery of damages arising out of, or related to deficiencies in, residential construction, except as specifically set forth in the Act. The Act does not specifically except actions arising from actual damages. To the contrary, it authorizes recovery of damages, e.g., for "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards. . . ." (§ 944.)

We disagree with *Liberty Mutual*'s view that, because sections 931 and 943 acknowledge exceptions to the Act's statutory remedies, the Act does not preclude common law claims for damages due to defects identified in the Act. (*Liberty Mutual, supra*, 219 Cal.App.4th at p. 107.) The appellate court omitted some of section 931's language, stating only that section 931 "provides, in relevant part: 'If a claim combines causes of action or damages not covered by this part . . . , the claimed unmet standards shall be administered according to this part. . . .' " (*Liberty Mutual,* at p. 107.) The omitted language specifies limited exceptions to the Act "including, without limitation,

personal injuries, class actions, other statutory remedies, or fraud-based claims." (§ 931.) *Liberty Mutual* then quoted section 943, which as we have indicated provides that "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed. In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute. . . ."

*Liberty Mutual*'s entire analysis of these two provisions consisted of one sentence: "These code sections establish the Act itself acknowledges that other laws may apply to, and other remedies may be available for, construction defect claims, and, therefore, that the Act is not the exclusive means for seeking redress when construction defects cause actual property damage." (*Id.*, 219 Cal.App.4th at p. 107.) The court did not discuss the effect of the first sentence of section 943, that "no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed." (§ 943, subd. (a).) It also did not discuss the specific list of exceptions set out immediately following that provision. Neither list of exceptions, in section 943 or in section 931, includes common law causes of action such as negligence. If the Legislature had intended to make such a wide-ranging exception to the restrictive language of the first sentence of section 943, we would have expected it to do so expressly.

Accordingly, we respectfully disagree with *Liberty Mutual* and conclude the Act does bar common law claims for damages caused by construction defects within the scope of the Act, subject to the Act's specific exclusions (e.g., fraud, personal injury, etc.) not at issue here.

Amicus curiae Consumer Attorneys of California (CAOC) makes a narrower argument -- not made by plaintiff -- that section 897 preserves a *common law* negligence claim for violation of standards not listed in section 896. As indicated, section 897 states "The standards set forth in this chapter are intended to address every function or

19

component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage." CAOC refers to legislative history that "The bill would provide that any function or component not specifically addressed by the standards shall be actionable if it causes damage. As a result, the bill would preserve homeowners' ability to recover for defects that cause damage that are not otherwise covered by the standards." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, p. 4.)

CAOC's proposed interpretation ignores the first sentence of section 897, expressing the intent that the Act be all-encompassing. The parties and the trial court understood section 897 to be a catch-all. Anything inadvertently omitted is actionable under the Act if it causes damage, thus preserving in the Act claims previously allowed by *Aas*. Where the Act wanted to make exceptions from the Act, it did so expressly, as with condominium conversions, etc. We cannot read section 897 as impliedly creating an exception from the Act while at the same time affording a remedy under the Act.

CAOC notes section 936 -- which addresses defendants subject to the negligence standard (as opposed to builders against whom plaintiffs need not show negligence (§§ 936, 942) -- allows "common law" defenses in lawsuits brought under the Act. However, that provision simply clarifies that statutory affirmative defenses created by section 945.5 are not exclusive. CAOC also points out section 936 states its negligence standard against certain defendants does not apply to strict liability claims. This does not support an argument that the Act allows common law negligence claims. (§ 943 ["Except as provided in this title, no other cause of action for a claim covered by this title . . . is allowed"].) CAOC argues we should construe "cause of action" in section 943 as referring to violation of a "primary right," not a "theory of liability," such that the Act allows homeowners to pursue both common law negligence theories and statutory theories under the Act as different theories of liability in a single lawsuit. This view conflicts with the statutory scheme as a whole and the legislative history.

20

We conclude the Act precludes common law claims in this case for damages covered by the Act.

B. The Act Covers The Tree Damage Claim

Plaintiff argues the Act does not cover the tree damage and therefore the Act does not preclude a common law claim to recover for tree damage. (§ 943 [exclusiveness of the Act for claims covered by the Act, except as provided by the Act].) However, the tree damage is within the scope of the Act.

We agree with plaintiff that this claim against Gerbo is not rendered moot by the fact the trial court ordered Knotty Bear to pay plaintiff some damages related to the trees.

The tree *damage* is not expressly covered by *section 896*. But adding soil to make the driveway level (which was the alleged cause of the tree damage) does implicate standards covered by section 896. Section 896 has standards for "[h]ardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems" (§ 896, subd. (a)(9)), but those standards are for "water issues" (*id*., subd. (a)) and "shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the structure so as to cause damage to another building component" (*id*. subd. (a)(9)). Damage to the trees was not damage to a building component. Another possible avenue for recovery -- though not invoked by plaintiff -- might be the building standard for "soil issues" (§ 896, subd. (c)), but that provision would not cover this claim for damages to replace the trees because the provision applies only if the soil causes "the land upon which no structure is built to become unusable for the purpose represented at the time of original sale by the builder or for the purpose for which that land is commonly used." (§ 896, subd. (c)(3).) Plaintiff's claim was not covered under the soil provision, because plaintiff did not claim the land became unusable. Instead, plaintiff put on evidence that the trees could be replaced and sought damages for that purpose (though the trial court rejected that evidence in ordering Knotty Bear to pay only for investigative

21

costs for the trees and reduction in value of the property due to loss of the trees).  Another standard in section 896 "with respect to issues regarding other areas of construction" addresses "[e]xterior pathways, driveways, hardscape, sidewalls, sidewalks, and patios" but merely says they shall not contain cracks.  (§ 896, subd. (g)(1).)

Thus, reading section 896 in isolation could lead to a conclusion that the tree damage is not recoverable.  However, we do not construe a statute in isolation but with reference to the entire scheme of law of which it is a part, so the whole may be harmonized.  (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 410.)

Section 897 provides:  "The standards set forth in this chapter are intended to address every function or component of a structure.  To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage."

Despite having invoked section 897 in the trial court, plaintiff on appeal argues section 897 does not apply because "trees are not structures" under the Act.

Yet section 897 on its face does appear to apply to the tree damage, because the Act defines "structure" as "any residential dwelling, other building, or *improvement located upon a lot* or within a common area."  (§ 895, subd. (a); italics added.)  The trial court instructed the jury on this definition.  The lay definition of improvement includes "to increase the value of (land or property) by making it more useful for humans (as by cultivation or the erection of buildings)."  (Merriam-Webster's Collegiate Dictionary (11th ed. 2006), p. 626.)  Additionally, the word "improvement" in the context of home improvement includes driveways (Bus. & Prof. Code, § 7151 [governing home improvement businesses]).

Thus, the driveway is an improvement located "upon [the] lot."  (§ 895.)  And section 897 provides that, to the extent that a function or component of the driveway, which is not expressly addressed by the Acts standards, "causes damage," it is actionable.

22

Here, the soil needed to be added to make the driveway level, and it was this added soil that damaged the trees, according to plaintiff's evidence.

Despite section 897's apparent applicability to the tree damage, plaintiff -- for reasons not made clear on appeal -- agreed to a special verdict form under section 897 that added words of limitation not found in the statute -- i.e., damage "to the structure" -- such that the jury was told on the special verdict form that a defect not specifically addressed by the standards is actionable if it "caused damage *to the structure*." (Italics added.)

Most of the written jury instructions were not made part of this appeal by the appellant's appendix or respondent's appendix, but the reporter's transcript shows the court correctly instructed the jury under section 897 that, "To the extent that a function or a component of a structure is not addressed by those standards [§ 896], it shall be actionable if it causes damage." This comports with discussions by court and counsel regarding the instructions, where the court said the instruction for section 897 "just looks like a cut and paste?," to which the defense said Yes, and plaintiff said nothing.

Yet the special verdict form, question #20, changed the language to damage "to the structure."

Inserting additional language into a statute violates the cardinal rule of statutory construction that courts must not add provisions to statutes. (*People v. Guzman* (2005) 35 Cal.4th 577, 587 (*Guzman*).)

To reiterate, section 897 provides that, to the extent a function or component of the driveway -- e.g., the addition of mounds of soil -- causes damage, it is actionable under the Act.

We recognize the Act elsewhere limits damage; section 944 provides that "the homeowner is only entitled to damages for the reasonable value of repairing any violation of the standards set forth in this title, . . . the reasonable cost of repairing and rectifying any damages resulting from the failure *of the home* [italics added] to meet the standards,

the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation, and all other costs or fees recoverable by contract or statute." (§ 944.) The Act provides: "Except as provided in this title [the Act], no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed. . . ." (§ 943; italics added.)

Insofar as section 944 allows recovery only for damages resulting from failure "of the home," it is clear that "home" is not limited to the structure where people reside, because section 942 states that, "In order to make a claim for violation of the standards set forth in Chapter 2 (commencing with Section 896), a homeowner need only demonstrate . . . that *the home* [italics added] does not meet the applicable standard . . . ." (§ 942.) As we have seen section 896 covers a multitude of defects not only in the residence but also in improvements such as driveways, landscaping, and damage to the lot, etc.

The trial court instructed the jury with the language of section 944. The trial court also instructed the jury that the Act's "standards" included section 897's catch-all standard, i.e., plaintiff must prove "a violation of one or more standards for residential construction as specified in . . . Sections 896 or 897[.]"

Thus, the special verdict form was incorrect in limiting damage "to the structure."

However, this error does not rise to the level of a miscarriage of justice warranting reversal. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury . . . unless . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; Code Civ. Proc., § 475 [no judgment or decision shall be reversed unless the appellant shows a defect that was prejudicial and caused the appellant substantial injury, and that a different result would have been probable absent the defect].)

24

Here, no one is complaining of the error in the special verdict form. Plaintiff on appeal does not argue the verdict form was erroneous. To the contrary, plaintiff presumes, without analysis or authority, that section 897 requires damage "to the structure," even though no such words appear in the statute. Consequently, plaintiff also fails to show prejudice from the erroneous verdict form. Moreover, we see no miscarriage of justice warranting reversal, given that the jury rejected all of plaintiff's other claims against Gerbo, even when the jury found violations of building standards. That the jury asked what question on the verdict form addressed tree damage does not support an inference that the jurors thought Gerbo was responsible for the tree damage. It does support an inference that the jurors wanted to be thorough.

We conclude plaintiff fails to show reversible error.

II

*Motions for JNOV or New Trial -- Substantial Evidence*

Plaintiff contends the trial court erred in denying the motion for JNOV on grounds of insufficiency of the evidence. Plaintiff asks us not only to enter judgment in her favor, but also to award damages in amounts suggested by plaintiff or determined by this court. Alternatively, plaintiff seeks a new trial on damages. We see no basis for reversal.

A trial court may grant a motion JNOV only if it appears from the evidence, viewed in the light most favorable to the party who won the verdict, that there is no substantial evidence to support the verdict. (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192.) As in the trial court, the standard of review on appeal is whether any substantial evidence supports the jury's conclusion, regardless whether there was also conflicting evidence. (*Ibid.*)

A.    Drainage

The jury found drainage violations but found Gerbo was *not* negligent with respect to those violations. Plaintiff argues no substantial evidence supported this verdict.

25

(§ 896, subds. (a)(5), (a)(9), (a)(13).) The trial court disagreed, noting Walters testified the drain installation was in compliance with the building plans, and the designer of the wall system allowed the water to pass underneath the house. We conclude plaintiff fails to show grounds for reversal.

We are not persuaded by defendants' citation of evidence favorable to their position that there were no drainage violations, e.g., there was a water leak due to the homeowners' failure to shut off the main water valve completely. The jury found there *were* violations of the Act's drainage standards.

Since Gerbo was a subcontractor rather than a "builder" under the Act, plaintiff could not prevail merely by showing a violation of the Act's building standards, but also had to show that Gerbo negligently caused, in whole or part, violation of the drainage standards. (§§ 911, 936.) The trial court correctly instructed the jury and further instructed: "Negligence is the failure to use reasonable care to prevent harm to one's self or to others. A person can be negligent by acting or by failing to act [court did not instruct that there must be a duty to act]. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation, or fails to do something that a reasonably careful person would do in the same situation. You must decide how a reasonably careful person would have acted in each defendant's individual situation. [¶] You may consider customs or practices in the community in deciding whether the parties acted reasonably. Customs and practices do not necessarily determine what a reasonable person would have done in the party's situation. They are only factors for you to consider. Following a custom or practice does not excuse conduct that is unreasonable. You should consider whether the custom or practice itself is reasonable."

The question on appeal is whether plaintiff shows that the evidence is insufficient to support the jury's finding that Gerbo was not negligent with respect to the drainage issues. The test is whether substantial evidence, even if contradicted, supports the

26

judgment. (*Jameson v. Five Feet Restaurant* (2003) 107 Cal.App.4th 138, 143.) Substantial evidence means evidence of ponderable legal significance that is reasonable, credible, and of solid value. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) Substantial evidence review is deferential to the fact-finder. (*Escobar v. Flores* (2010) 183 Cal.App.4th 737, 748.)

Plaintiff claims her expert witness John Walters "found" a lack of drainage and "found" Gerbo negligent. However, it was the job of the jury, not plaintiff's expert, to make findings and determine whether Gerbo was negligent. What plaintiff's expert did was to "opine," not "find."

Moreover, plaintiff's expert agreed the floor elevation was determined by Cornerstone Engineering, not Gerbo, but faulted Gerbo for failing to alert others that they needed to make sure the floor was high enough to allow a two percent slope. Plaintiff says Gerbo admitted he was negligent, because he testified he knew there was a problem, yet he did nothing to alert the builder. In other words, plaintiff claims liability on a theory of failure to warn. However, plaintiff fails to show Gerbo had a duty to warn. Although plaintiff's expert, Walters, opined Gerbo was at fault for failing to alert others, plaintiff cites no evidence that Gerbo had a duty to warn anyone rather than relying on the builder's plans given to him that were drafted by the engineers.

Walters is a general contractor, not a licensed engineer, as opposed to the engineering experts who testified in favor of Gerbo. Truckee Sanitation District engineer Blake Tresan testified Gerbo's installation of the sewer lateral complied with the variance issued by the District. Tresan attributed responsibility for needing a variance to the builder Eugene Stewart and Knotty Bear. Gerbo's engineering expert, Steve Sert, testified that, because of errors made by the builder's engineers in preparing the building plans, no excavator-subcontractor could have avoided the ultimate slope and cover situation if it followed the building plans. Plaintiffs did not call any engineering expert as a witness.

27

We conclude substantial evidence supports the jury's verdict in favor of Gerbo on the drainage issues.

B.      Slate Deck

Plaintiff next argues under a different subheading an issue related to the drainage issue, i.e. the flaking slate deck at the rear of the house due to poor drainage.  In rejecting plaintiff's substantial evidence argument, the trial court noted Phillips testified that design and environmental factors caused the damage.  Plaintiffs argue their expert, Walters, testified the tiles are lifting from the deck because of trapped moisture under the deck, and Walters blamed Gerbo in part for that damage (for failure to warn) and said the industry standard is to speak up and question the plans if you think there is a problem.  However, as plaintiff acknowledges, the defense expert testified it was a design issue in the plans, which were followed by Gerbo and Davidson, and neither Gerbo nor Davidson fell below the standard of care or caused the violation of the Act.

C.      Siding

Plaintiffs next contend there was insufficient evidence to support the finding in favor of Davidson as to the issue of siding.  The trial court noted the parties offered competing evidence that the jury weighed in reaching its verdict.

The Act states exterior siding shall be installed "in such a way so as not to allow unintended water to pass into the structure or to pass beyond, around, or through the designed or actual moisture barriers of the system, including any internal barriers located within the system itself. . . ."  (§ 896, subd. (a)(10).)  The Act also states siding "shall not allow excessive condensation to enter the structure and cause damage to another component" (§ 896, subd. (a)(11)), and "shall not contain significant cracks or separations" (§ 896, subd. (g)(2)).

28

On this issue, plaintiffs forfeit their substantial evidence challenge by massaging the evidence in their favor and failing to acknowledge evidence in favor of the defense. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

Plaintiffs again focus on their own expert, Walters, without acknowledging that his testimony was undermined by the defense expert Alan Phillips. Thus, Walters testified that a photograph he did not take depicted someone using a moisture meter to pierce the moisture barrier into the framing to measure moisture content, and assertedly showed moisture was getting beyond the moisture barrier.

However, defense expert Alan Phillips testified that his hand was the hand depicted in the photograph discussed by Walters, and he (Phillips) was using the meter to measure moisture on the exterior of the barrier; he did not pierce the barrier; he measured the moisture in the framing inside the same location; and he determined that no moisture was getting beyond the barriers. Phillips opined there was no violation of the Act in this respect and testified Walters was mistaken.

Plaintiff's appellate brief hides the ball on this evidence, setting forth only Walters' testimony about this photograph and stating only that Phillips "alleged" there was no investigation showing water passed beyond the siding and "refuted" the "fact" of Walter's testimony.

We conclude plaintiff has forfeited the substantial evidence argument concerning siding.

Under the same heading of insufficiency of evidence, plaintiff argues that "regardless of any factual dispute," the critical issue here relates to interpretation of the statute concerning moisture barriers. We decline to address this argument due to plaintiff's failure to present it properly under a separate heading, as required by California Rules of Court, rule 8.204(a)(1)(B).

At the end of this argument, plaintiff pivots to a different argument -- that plaintiff showed a violation of the Act's standard that "Stucco, exterior siding, and other exterior

29

wall finishes and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall not contain significant cracks or separations." (§ 896, subd. (g)(2).) Plaintiff argues "Mr. Walters['s] testimony and annotations on the plans outlined numerous instances of gaps." However, plaintiff offers no citations to the record, in violation of California Rules of Court, rule 8.204(a)(1)(C), which requires that each appellate brief "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."

Plaintiff then complains the defense expert applied his own definition of "significant" as cracks that leak, despite acknowledging the statute did not require that the cracks leak. However, this is a matter of statutory interpretation not properly briefed under a separate heading.

D.     Garage Slab

Plaintiff argues the evidence was insufficient to support the finding in favor of Davidson regarding the garage slab. We disagree.

Plaintiff argues that Walters testified there is a gap at the intersection of the garage slab and the garage wall such that water is getting into the ceiling cavity below the garage, into the bathroom below. Plaintiff argues this caused damage recoverable under the catch-all provision of section 897. Plaintiff argues defendants "proffered no evidence that there was not any damage," and because Davidson did the garage slab work, there was no substantial evidence to find no liability.

However, the cited portion of Walters' testimony shows only that he said, "the photograph where we showed the bottom of the threshold, the door into the garage where the open plywood was, directly below that is this bathroom. And they've had water leaks in that bathroom in the drywall ceiling and the light fixture filling up with water. So it's coming in from that open void that isn't protected into that building."

30

Plaintiff acknowledges seeking damages from Davidson for a "garage slab floor crack that allowed snow from the vehicles to leak down into the bathroom below the garage floor." The cited evidence does not show a garage slab floor crack.

We conclude plaintiff fails to show insufficiency of the evidence.

III

*Expert Fees Under Code of Civil Procedure Section 998 Offer to Compromise*

Plaintiff argues the trial court improperly awarded Gerbo expert witness fees pursuant to Code of Civil Procedure section 998, which provides that any party may serve a written offer to settle the case, and the failure to accept the offer has consequences for a plaintiff who does not obtain a more favorable result at trial. (*Peterson v. John Crane, Inc.* (2007) 154 Cal.App.4th 498, 504 (*Peterson*).) In that event, the plaintiff cannot recover postoffer costs, must pay the defendant's costs from the time of the offer, and may be held liable for a reasonable sum to cover the defendant's expert witness fees. (*Ibid.*, citing Code Civ. Proc., § 998, subd. (c)(1).)

Section 998 requires that the terms and conditions of the offer be stated, and the standard of review of the validity of a Code of Civil Procedure section 998 offer is whether the terms and conditions are sufficient to be capable of valuation. (*Chen v. Interinsurance Exchange of the Automobile Club* (2008) 164 Cal.App.4th 117, 121 (*Chen*).)

Gerbo submitted to plaintiff a statutory offer to compromise on July 10, 2013. It offered to settle the dispute by paying plaintiff "the sum Forty Nine Thousand Nine Hundred and Ninety Nine and No Cents ($39,999.00 [sic])." The trial court concluded, as would any reasonable person, that the "3" was a typographical error.

Plaintiff did not seek clarification and did not accept the offer.

Gerbo later submitted an offer of $50,000, which apparently was submitted too late under the statute.

31

After trial, Gerbo sought to recover costs for expert witness fees under Code of Civil Procedure section 998, for having obtained a more favorable result than the settlement offer.

Plaintiff asked the trial court to strike the expert witness fees.

The trial court ruled that plaintiff and her attorney, by their own admission, were able to value the offer at $49,999, evaluate it, and make a reasoned decision not to accept it. The court said the obvious typographical error did not render the offer so ambiguous as to preclude its operation in this case. The court ordered plaintiff to pay $48,253.78 for Gerbo's expert witness fees.

On appeal, plaintiff argues she did not admit she was able to evaluate the offer but merely indicated she did not reject a reasonable offer but rather made an "informed and reasonable" decision not to accept the "vague" initial offer. Plaintiff invokes the principle that any ambiguity in the offer must be construed against the drafting party. (§ 1654; *Garcia v. Hyster Co*. (1994) 28 Cal.App.4th 724, 732-733.) On the other hand, while we are not asked to, and do not, decide whether plaintiff had a duty to seek clarification, we observe "it would be consistent with the settlement purposes of section 998 for an offeree to clarify any perceived ambiguity of an offer with the offeror." (*Peterson, supra*, 154 Cal.App.4th at p. 506, fn. 8.)

We conclude the terms and conditions were sufficient to be capable of valuation (*Chen, supra*, 164 Cal.App.4th at p. 121), and plaintiff fails to show grounds for reversal regarding expert witness fees.

IV

*Attorney Fees*

The judgment allowed plaintiff to move for attorney fees against Knotty Bear pursuant to contract (§ 1717).

Plaintiff filed a motion seeking -- from Knotty Bear only -- attorney fees totaling $869,628 for attorney Quade and his law firm Quade and Associates, a PLC. Quade is cotrustor of the plaintiff-trust that owns the home and husband of plaintiff Ann Gillotti, who is also cotrustor and who brought suit in her individual capacity as well as her capacity as trustee of her and her husband's trust. Much of the billings were for work performed by Quade himself. Knotty Bear, having failed to appear for trial, did not file an opposition in the trial court and has not filed a brief in this appeal. The respondents' brief filed by Davidson and Gerbo says they do not care about this issue, since it does not affect them.

The trial court granted the motion in part but denied it in part. The court concluded Quade was not entitled to recover any fees for work he personally performed, because in addition to being Gillotti's lawyer and husband, Quade had a personal pecuniary interest in the lawsuit as cotrustor of the trust that held title to the subject property -- a vacation home that Quade enjoyed with his wife and family. The trial court correctly noted that, during trial, Quade had repeatedly referred to himself and his wife as owners of the vacation home and asserted the benefits to his family of owning the vacation home had been diminished as a result of construction defects. Indeed, Quade testified at trial and gave his opinion "as a homeowner" as to how the tree damage affected the value of the property. He tried to add his opinion as a lawyer with experience in construction defect litigation, but the trial court stated a foundation would have to be laid for such testimony, whereas a statute allows a homeowner to opine on value of his property. Quade's associate then asked: "My question is, as a homeowner in assessing the value of your property as a homeowner, do you have an opinion . . . .," to which Quade answered "Yes" and gave his opinion that the lack of the two trees reduced his property value by $550,000.

Moreover, the jury instructions referred to "plaintiffs," plural -- e.g., the court told the jury: "Plaintiffs are claiming that there are defects in the construction of their home." Quade, on behalf of Gillotti, agreed to the jury instructions.

Although the statute defines "owner" broadly, to include the spouse of an owner and a person entitled to possession of the property (Evid. Code, § 813, subds. (a)(2), (c)(1)), and the jury was instructed a spouse could opine on value, Quade did not testify that he was giving his opinion as the spouse of the owner or a person merely entitled to possession. He gave his opinion as "homeowner."

The trial court allowed fees for work performed by others in Quade's law firm but reduced the amount because those billings were excessive. The court awarded plaintiff $165,000 for attorney fees and $81,384 for paralegal fees against Knotty Bear.

An order granting or denying attorney fees is generally reviewed under an abuse of discretion standard, though determination of whether the criteria for an award have been met is a question of law which is reviewed de novo. (*Rickley v. Goodfriend* (2012) 207 Cal.App.4th 1528, 1533 (*Rickley*).) Courts have declined to award attorney fees to lawyers who have a personal pecuniary interest in the litigation, in the absence of evidence that the attorney spent extra time representing other parties. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44 (*Gorman*).)

In denying fees claimed by Quade for his own work, the trial court cited *Gorman*. There, a homeowner, who was also a lawyer in an incorporated law firm, represented himself and his wife in a lawsuit against a general contractor who did construction work on their residence. The homeowner-attorney and his wife signed retainer agreements with his law firm and another firm. After settling the suit, the husband and wife sought contractual attorney fees for services performed by the husband-attorney and by his associate and paralegals. (*Id.*, 178 Cal.App.4th at pp. 90, 95.) The trial court awarded only a portion of the fees. The appellate court concluded there was no attorney-client relationship between the homeowner-attorney and his wife; there was no indication that

34

the wife suffered any damage apart from that suffered by her husband. Their interests appeared to be joint and indivisible. There was no claim that the husband-lawyer spent extra time representing his wife in addition to the time he spent representing himself. Since the husband's billable hours appeared to be entirely attributable to representing his common interests with his wife, he was not entitled to attorney fees. (*Id.* at p. 95.)

On appeal, plaintiff argues *Gorman* is distinguishable because there the attorney-husband represented both himself and his wife individually, whereas here Quade represented his wife as representative of the family trust, and he was not a named plaintiff in his individual capacity, though the plaintiff-Trust bears his name.

Plaintiff claims *Rickley, supra*, 207 Cal.App.4th 1528, requires that we remand to allow plaintiff Gillotti to proffer evidence that she had an attorney-client relationship with Quade. We disagree.

In *Rickley*, a homeowner-attorney sought *statutory* attorney fees against neighbors (Code Civ. Proc., § 1218) for the attorney representing her wife in contempt proceedings after the neighbors failed to comply with a nuisance judgment against them. (*Rickley,* 207 Cal.App.4th at p. 1530.) The appellate court said the statute, Code of Civil Procedure section 1218, authorizes an award of attorney fees to encourage parties to prosecute contempt proceedings, which are quasi-criminal in nature. (*Rickley,* at p. 1537.) Although the appellants initiated the nuisance lawsuit to protect their own property and economic interests, when they later sought a contempt citation in the quasi-criminal proceeding, they were, at that point, "assisting the court and public interest by seeking to enforce a court order." (*Ibid.*) The homeowner-attorney vindicated an important public interest and risked not being compensated for her time. That is why the appellate court held she should recover attorney fees -- as long as the homeowner-attorney could show she had an attorney-client relationship with her homeowner-wife. (*Id.* at pp. 1537-1538.) Since the trial court did not consider whether such a relationship

35

existed, the appellate court remanded for the trial court to make that factual determination.  (*Ibid.*)

*Rickley* is not controlling here, because here there is no statutory provision and no public interest being vindicated.

We conclude the denial of attorney fees for work performed by Quade was proper.

DISPOSITION

The judgment is affirmed.  The orders denying a new trial or JNOV are affirmed. The order awarding expert fees to Gerbo under Code of Civil Procedure section 998 is affirmed.  The order regarding attorney fees as against Knotty Bear is affirmed.  Gerbo and Davidson shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


      HULL          , J.


We concur:


      BLEASE       , Acting P. J.


      MURRAY     , J.

36

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| ANN E. GILLOTTI, Individually and as Trustee, etc., | C075611 |
| Plaintiff and Appellant, | (Super. Ct. No. TCU083162) |
| v. | |
| EUGENE W. STEWART et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Nevada County, Robert Lynn Tamietti, Judge. Affirmed.

Quade & Associates, Michael W. Quade and Cheryl Lynn Gustafson for Plaintiff and Appellant.

Epsten Grinnell & Howell, Anne Lorentzen Rauch and Douglas Grinnell; and Berding & Weil, Tyler P. Berding and Steven S. Weil for Amici Curiae Consumer Attorneys of California in support of Appellant.

Hollingshead & Associates, Timothy Cooper McNeill and Robert N. Paige for Defendants and Respondents.

Ware Law, Donahue Fitzgerald, Kathleen Frances Carpenter; and NewMeyer & Dillion, Alan H. Packer for Amicus Curiae California Building Industry Association and Building Industry Legal Defense Foundation in support of Respondents.


THE COURT:


The opinion in the above-entitled matter filed on April 26, 2017, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:



        BLEASE        , Acting P. J.



        HULL        , J.



        MURRAY        , J.